# SUPREME COURT.

HARRISON R. FORBES, respondent agt. LOOMIS WILLARD, Impleaded, &c., appellant.

An *order* of the court made for the *punishment* of a party for not answering in *proceedings supplementary to execution* is appealable.

Where a witness or party, in supplementary proceedings, declines to answer questions propounded to him, on the ground that his answers will have a tendency to *criminate* him; it is the province of the court to determine whether that *will probably be the effect of the answers,* if they are required to be given. And when it is fairly ascertained that such will not be the effect of the answers, he should be required to answer the questions put to him.

The provisions of the Code were intended to give the creditor complete authority for a full and searching examination of the judgment debtor, for the purpose of ascertaining particularly the amount and condition, as well as the disposition the debtor had made, or attempted to make, of his property. And by an express provision its enactments are not to be strictly construed.

The object plainly intended by the amendment in 1863, to section 292, was, to render the judgment debtor liable to answer questions concerning the disposition he might have made of his property, without any restriction whatever, on account of the *purposes* for which he might have disposed of it.

It could not have been intended to restrict the inquiry to cases where formal instruments of conveyance or assignment had been made and delivered by him. But to include within it, all conveyances, assignments and transfers whatsoever, which the debtor may in any manner have made of his property, whether by written conveyance, assignment or transfer, or by *transfers* which should prove to be made by actual delivery,following or accompanying an agreement by *parol.*

Therefore, the debtor may properly be required to answer fully, concerning the disposition he may have made of his property, whether it has been done by deed, writing or otherwise, notwithstanding the fact that his examination will show that he has been guilty of a crime in doing it, and without any qualification or restriction arising out of the nature and character of such crime.

Where the inquiries made of the debtor,have reference to the *source* from which,and the *means* by which he may have acquired his property; in discovering these facts, the debtor may be compelled, if he is required to answer, to give evidence tending to show that he has been guilty of a criminal offense different from those falling within the protection of the amendment of 1863.

This he could not be required to do, unless the case is brought within the fifth part of § 292 of the Code, which is limited to commissions of *fraud.* For the rule of the common law is well established, that no person, whether a witness or a party, shall be compelled to answer, when examined on oath as such, in a judicial proceeding, where the effect of his answer would expose him to a prosecution for a crime.

The provisions of the Code under said amendment that "no person shall on examination pursuant to this chapter, be excused from answering any question, on the ground that his examination will tend to convict him of the commission of a

fraud," is not to be restricted simply to a fraud in the disposition of the debtors property, but to *any fraud* whatsoever.

*Held* in this case, that the questions were pertinent to the inquiry the creditor was authorized to make—having reference to commissions of fraud by the debtor, and he was required to answer.

*Erie General Term, February,* 1868.

*Before* DAVIS, MARVIN *and* DANIELS, *Justices.*

PROCEEDINGS were taken in this action, supplementary to the recovery of a judgment against the defendant and the issuing and return unsatisfied of an execution against his property. Upon his examination nine different interrogatories were propounded to him by the plaintiff's counsel, which he declined to answer, on the ground that his answers would tend to convict him of a crime, other than the crime of fraud. The particular crime he was apprehensive his answers.might tend to convict him of, was stated in his objection to answer some. of these interrogatories, to be that of conspiracy.

His refusals to answer were certified by the referee to the county judge of Niagara county. Who on the application of the plaintiff's counsel issued an attachment against the defendant, on which he was arrested and taken before the county judge. Interrogatories were filed with the county judge, which the defendant was required to answer. And in his answers, by way of justifying his refusals to answer before the referee, he stated that he had been arrested on a warrant issued by the police justice of the city of Lockport, on a complaint made against him by the plaintiff's counsel, charging him with the crime of conspiracy with others, to cheat and defraud the plaintiff and the public generally, by means of false and fraudulent drafts, purporting to have been issued by the Canton Banking House, and obtaining money and property by means of false drafts from the plaintiff and the public generally.

The questions he was required to answer were:

1st. Whether he had seen the plaintiff about the middle of December, 1865 ? 2d. Whether about that time he re-

ceived of him at Toronto, about three thousand and sixty dollars in Canada currency? 3d. Whether he received any, and if any how much money in Canada in December, 1865? 4th. Whether he had in his possession in December, 1865, money or currency amounting to three thousand dollars? 5th. What money in bills or coin he paid out or delivered to any person or persons, in December, 1865, or any time since then, and the consideration for such payment or delivery? 6th. How much money he had in December, 1865, or at any time since then? 7th. Whether since November, 1865, he had done any business in his own name, and if he had, what the business was? 8th. The amount in value he had had at any one time of the proceeds of his own business transactions, since November, 1865? And 9th. What other money or property he had had, except what was derived from the farm, since November, 1865?

The judgment in this action was recovered for money advanced by the plaintiff in discounting the drafts referred to in the defendant's explanatory statement. And in declining to answer the interrogatories propounded to him, he offered to answer as to any other business transaction by him, and as to any other money or property he had received, except such as connected with or derived from drafts drawn by the Canton Banking Company.

The county judge held that the defendant was bound to answer these interrogatories, and overruled his objections to doing so, and ordered a commitment to issue against him commiting him to the jail of Niagara county, until he submitted to answer or should be otherwise discharged, and imposed a fine upon him sufficient to indemify the plaintiff for the costs and expenses of the proceedings. This order was entered with the county clerk and the defendant appealed from it to this court.

RICHARD CROWLEY, *for appellant.*
A. W. BRAZER, *for respondent.*

*By the court*, DANIELS, J. The plaintiff's counsel objected upon the argument of the present appeal, that the order made by the county judge was not appealable, and relied upon *Mitchels case*, (12 *Abb.*, 249) in support of the objection. That case affords the plaintiff no assistance whatsoever in that respect. It was an appeal taken in a proceeding against an attorney for a contempt in the course of the trial of an issue of fact. And the order of the court made in that proceeding, was held not to be appealable. The question whether an order made for the punishment of a party for not answering in proceedings supplementary to execution, was appealable or not, was in no manner involved in the case. The right of the party affected by such an order to appeal, is dependent upon the provisions of the Code of Procedure relating to proceedings supplementary to execution, and not upon the statutory provisions relating to proceedings for the punishment of contempts.

As to the former, the Code provides that appeals may be taken to the general term of this court from orders made by a county judge, in such proceedings, where the order appealed from, affects a substantial right (§§ 248, 349 *of Code of Procedure*). And certainly, few, if any orders, can be made in such proceedings, more serious or certainly affecting substantial rights, than those which deprive the party of his liberty for an indefinite period of time, as the order in controversy clearly does that of the defendant. In the case of *Clapp* agt. *Lathrop*, (23 *How.*, 424) ; *Holstein* agt. *Rice*, (15 *Abb.*, 307) ; and the *National Exchange Bank* agt. *Hannigton*, decided in this district, no doubt was entertained, but an order made in these proceedings directing a party to be punished for a contempt in not answering questions propounded to him concerning his property, was an appealable order under the provisions of the Code already referred to. And these clear and ample provisions leave no room for any substantial doubt upon that subject. The objection that the

order is not an appealable order, must therefore be overruled.

Where a witness declines to answer questions propounded to him on the ground that his answers will have a tendency to criminate him, it is the province of the court to determine whether that will probably be the effect of the answers, if they are required to be given, (*Cowen and Hill's notes, 2 Philips Evidence, part 2, 737, 739, and cases there cited*). And when it is fairly ascertained that such will not be the effect of the witnesses answers, he should be required to answer the questions put to him. Under this rule the defendant should certainly have answered the fourth, sixth, eighth and ninth interrogatories propounded to him. By these, he was required to answer, whether in December, 1865, he had in his possession money or currency, amounting to three thousand dollars? How much money he then had, and how much at any one time, since November, 1865, he had had of the proceeds of his own business transactions, except what had been derived from the farm?

These answers would not have had any tendency to criminate the defendant, for they do not ask him to disclose the source, person or circumstances, from or under which the money or property had been derived. They inquire simply as to the fact of his having had money in his possession after the month of November, 1865.

The fifth interrogatory propounded, was within the spirit of the amendment made to § 292 of the Code in 1863. By that interrogatory he was asked to state what money in bank bills or coin he had delivered or paid to any other person or persons, since December, 1865, and the consideration for such delivery or payment? The provisions of the Code were intended to give the creditor complete authority for a full and searching examination of the judgment debtor, for the purpose of ascertaining particularly the amount and condition, as well as the disposition the debtor had made or attempted to make of his property. And by an express

provision, its enactments are not to be strictly construed (§ 467.)

By the amendment to § 292 made in 1863, it was provided that the debtor shall not "be excused from answering any question, on the ground that he has before the examination, executed any conveyance, assignment or transfer of his property for any purpose, but his answer shall not be used as evidence against him in any criminal proceeding or prosecution." The object plainly intended by this amendment, was to render the judgment debtor liable to answer questions concerning the disposition he might have made of his property, without any restriction whatsoever, on account of the purposes for which he might have diposed of it. It could not have been intended to restrict the inquiry to cases where formal instruments of conveyance or assignment had been made and delivered by him. But to include within it, all conveyances, assignments and transfers whatsoever, which the debtor may in any manner have made of his property. No reason existed for extending this right of examination to cases where the debtor had made a written conveyance, assignment, or transfer of his property, which did not also require it to be extended to cases where the transfer should prove to be made by an actual delivery, following or accompanying an agreement by parol.

On the other hand, not only the same propriety, but the same necessity, required that it should be equally provided for all cases alike. And from the language made use of, it may be fairly inferred, that it was the intention of the legislature so to extend it by the enactment of this amendment. Otherwise, the word "transfer" would not have been used, for the terms "conveyance" and "assignment" were themselves sufficiently comprehensive to include all those cases where the debtor disposed of his property by deed or other instrument in writing.

When the debtor delivers over to other persons his personal property, or choses in action, by way of performing

agreements made to defraud his creditors even though it may be done without any writing whatever, he practically and effectually does execute a transfer of such property and choses in action within the fair intendment of those terms as they are used in this amendment. It could not have been intended by the amendment that the debtor should be excused from answering where the transfer should prove to be made without writing, and to require him to answer if it was attended with the only additional circumstance of being made by writing. No reason exists for making any such discrimination. On the other hand, it would be unnatural as well as absurd. Under this amendment therefore, the debtor may properly be required to answer fully concerning the disposition he may have made of his property, whether it has been done by deed, writing or otherwise, notwithstanding the fact that his examination will show that he has been guilty of a crime in doing it, and without any qualification or restriction arising out of the nature and character of such crime.

The other interrogatories propounded to the defendant which he refused to answer, do not relate to the disposition which the debtor may have been supposed to have made of his property, or to the property he merely had in his possession or under his control But they have reference to the source from, and the means by which he may have acquired it. And in discovering these facts the debtor may be compelled, if he is required to answer, to give evidence tending to show that he has been guilty of a criminal offense different from those falling within the protection of the amendment of 1863. This he could not properly be required to do, unless the case is brought within the fifth part of § 292 of the Code. For the rule of the common-law is well established, that no person whether a witness or a party, shall be compelled to answer when examined on oath as such in a judicial proceeding, where the effect of his answer would be to expose him to a prosecution for a crime (*Henry* agt.

*Bank of Salina*, 1 *Com.*, 83 ; *Short* agt. *Mercier*, 1 *Eng. Law and Eq.*, 208). And that rule continues to exist in full force, so far as it has not been abrogated by positive legislation.

In these proceedings, such legislation so far as it becomes necessary at present to consider it, extends no further than to require that the party or witness shall answer, even though his answers may show that he has been guilty of a fraud. The case of *Clapp* agt. *Lathrop*, (23 *How.*, 423), was relied upon on the argument as an authority favoring the restriction of this provision to cases of fraud in the disposition of the property of the debtor. But the question whether it should be so restricted, was not presented in that case. And the decision itself does not indicate that the court pronouncing it intended to decide that point. The provision in the Code is subjected to no such limitation. By that it is declared that "no person shall, on examination pursuant to this chapter, be excused from answering any question, on the ground that his examination will tend to convict him of the commission of a fraud," (§ 292 *of Code,*) not simply of a fraud in the disposition of his property, but of any fraud whatsoever.

Wherever one person is guilty of a fraud in disposing of his property, the other who receives it from him with a like intent, is also equally guilty of a fraud. And yet under this provision, the latter would be clearly bound to answer. The peculiar nature or quality of the fraud, the answers of the party or witness may tend to show he has committed, is not important. Neither does his obligation to answer depend upon the circumstance that the party or witness interrogated may or may not have committed the fraud alone; such a construction would be so restricted as to render this provision of the law of scarcely any practical benefit. Wherever the party or witness interrogated may have comitted a fraud, whether solely, or united and combined with others, it is still a fraud within the intent and meaning of the language used in this section, and the necessary disclosure of

it by the answers required to be given in the course of the examination for the discovery of the debtors property, constitutes no legal justification for the party or witness, who on that account refuses or declines to answer the questions propounded to him for that purpose—Whether the fraud has been committed in disposing of, or in receiving, purchasing or otherwise acquiring the property which forms the proper subject of such an examination, and its disclosure is required in the lawful and legitimate course of the examination for the purpose of making the discovery, the creditor is entitled to demand concerning the property of his judgment debtor. Neither the debtor nor any witness produced by him or the creditor, is at liberty to shield himself from answering, because the answers required will lead to that disclosure. The questions of course, must be pertinent to the inquiry which the law allows to be instituted by the creditor against the judgment debtor. Where they are not so, both the debtor and the witnesses produced in the course of the examination, would be entitled to be protected in refusing to answer them.

The questions in this case were pertinent to the inquiry the creditor was authorized to make. By them, the debtor was required to state whether he received of the plaintiff about three thousand and sixty dollars, in Canada currency at Toronto, in December, 1865, whether he received any, and if any, how much money in Canada, in December, 1865, and whether he had done any, and if any, what business in his own name, since November, 1865? These questions he declined to answer, on the ground that his answers would tend to show that he had been engaged in a conspiracy to defraud the public by negotiating and selling spurious drafts. In other words that he had acquired his property by the commission of a fraud. Whether that fraud affected the plaintiff alone, or whether its successful execution affected a large portion of the public, can make no difference in the construction of the language the legislature have used. It

Forbes agt. Willard.

is still a fraud, and it is no more than that, even if the defendant did conspire and combine with others in the commission of it; and as such he was bound to disclose it, if its discovery became essential to the complete examination the creditor had a right to prosecute, for the purpose of ascertaining the nature, condition, extent and situation of his property. That it was essential to that end was not denied upon the argument of the present appeal. The order appealed from should therefore be affirmed.

DAVIS and MARVIN J.J. concur.