(8 Misc. Rep. 159.)

In re TAYLOR.

(Court of Oyer and Terminer, Tompkins County. March 29, 1894.)

1. CONTEMPT—REFUSAL TO TESTIFY BEFORE GRAND JURY.
Refusal to testify before a grand jury is a contempt committed in the presence of the court on which the grand jury is attending.

2. COURTS—WHEN IN SESSION—TEMPORARY ADJOURNMENT.
The session of a court of oyer and terminer continues, though the court takes a recess and adjourns the grand jury for several days.

3. HABEAS CORPUS—ISSUANCE DURING SESSION OF OYER AND TERMINER.
　　Under Laws 1892, c. 686, § 99, providing that during the session of the oyer and terminer no person detained in the county jail on a criminal charge shall be removed therefrom by writ of habeas corpus unless it is issued by or returnable before such court, a person imprisoned for contempt of the court of oyer and terminer cannot be removed on habeas corpus returnable before a justice of the supreme court, though the oyer and terminer has taken a recess of several days.

4. WITNESS—PRIVILEGE—TESTIFYING BEFORE GRAND JURY.
　　A witness cannot refuse to testify before the grand jury on the investigation of a charge against another person on the ground that his testimony may tend to criminate him, where he has been promised exemption from prosecution on any evidence which he should give.

5. SAME—QUESTION OF PRIVILEGE—BY WHOM DETERMINED.
　　The witness is not the sole judge as to whether his testimony, if given, would tend to criminate him, but the question of privilege is one of fact for the court.

Proceeding to punish Frederick L. Taylor for contempt of court in refusing to answer questions before the grand jury.

J. H. Jennings, Dist. Atty., and S. D. Halliday, for the People.
John B. Stanchfield and Tompkins & Leary, for defendant.

FORBES, J.　The power of the court to proceed in contempt is incident to every judicial tribunal, derived from its very constitution, and without any express statutory aid.　The doctrine in these broad terms is generally asserted, and is believed to be sound.　The narrower doctrine, about which there is no dispute, is that this power is inherent in all courts of record.　Yates v. Lansing, 9 Johns. 395.　In the Cartwright Case, 114 Mass. 230–238, it is held:

"It is inherent in courts of chancery and other superior courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of the Magna Charta and the twelfth article of our declaration of rights."

See, also, Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77.

"Courts of justice are universally acknowledged to be vested, by their very creation, with powers to impose silence, respect, and decorum in their presence, and submission to their lawful mandates."　Anderson v. Dunn, 6 Wheat. 204, 227; Ex parte Robinson, 19 Wall. 505, 510; 2 Bish. Cr. Law (7th Ed.) § 247.

"It is a power not derived from any statute, but arising from necessity; implied, because it is necessary to the exercise of all their powers. Without such power, it was observed in Easton v. State, 39 Ala. 552, the administration of the law would be in continual danger of being thwarted by the lawless."

"Any willful act tending to obstruct, interrupt, or embarrass the proceedings of a court, or to corrupt or impede the administration of justice, is a contempt of the authority of the court against which such willful act is directed."　Cheadle v. State, 110 Ind. 301, 11 N. E. 430.

This right and power of the court may be exercised independently of the statute, as an examination of these authorities will show. The offense for which Taylor was adjudged guilty of a criminal contempt is defined by sections 8 and 14 of the Code of Civil Procedure.　Section 8, subd. 5, reads as follows:

"Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory."

Section 14, subd. 5, defines the manner in which contempts can be punished civilly, and in what cases. Subdivision 5 reads as follows:

"A person subpoenaed as a witness, for refusing or neglecting to obey the subpoena, or to attend, or to be sworn, or to answer as a witness."

By section 143 of the Penal Code, criminal contempts are also defined, and subdivision 6 of that section reads as follows:

"Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory."

Under this section of the Penal Code, the party refusing to answer, being guilty of a criminal contempt, may be indicted by the grand jury, and, upon conviction thereof, punished by the court for a misdemeanor; and this punishment may be inflicted notwithstanding the summary punishment by the court for the criminal contempt committed in its presence. In re Jones, 6 Civ. Proc. R. 250; People v. Meakim, 133 N. Y. 225, 30 N. E. 828; Bish. Cr. Law, § 1067; Code Civ. Proc. § 13. It is not so certain, however, that the period of summary punishment by the court for a criminal contempt is confined to only 30 days, as seems to be indicated by Code Civ. Proc. § 9. In the case of People v. Davidson, 35 Hun, 471, Davis, P. J., in the first department, at general term, setting aside the conviction, said:

"We are glad to say that there is nothing in the case that will prevent the witness from being brought again into court for examination, and, on refusal to testify, being subject to whatever punishment is necessary to make her obedient to the primary duty, under our government and laws, of every good citizen when brought as a witness into a court of justice, which is to speak 'the truth, the whole truth, and nothing but the truth,' ·touching the subject-matter of the controversy. If the power to compel this did not exist, then justice may be defeated in every effort to redress the wrongs and enforce the rights of litigants."

The authorities in this state also hold that it would be useless to confine the period of punishment to only 30 days' time, for the reason that, to conceal evidence, and shield another, one might very well afford to remain in confinement for 30 days, to permit his friend to escape punishment. This is not the policy of the law in this state. Code Civ. Proc. § 2285; People v. Davidson, 35 Hun, 471. In the case at bar, the offense upon which the summary conviction was made occurred while the oyer and terminer was in session with a grand jury in the same courthouse, and, as we insist, in the presence of the court. In the Bergh Case, 16 Abb. Pr. (N. S.) 266, it was held: "The grand-jury room is an extension of the court room, and its session is a part of the session of the court." In that case the contempt was for delivering an aspersive letter to one of the grand jurors. This was held to be contemptuous and insolent behavior in the presence of the court. In the case of People v. Barrett, 121 N. Y. 678, 24 N. E. 1095, affirming 56 Hun, 351, 9 N. Y. Supp. 321, where the subject was fully discussed, the court of appeals, in a memorandum decision, Earl and Finch, JJ., dissenting, held "that, where a reporter conceals himself in the petit-jury room, though the judge was then absent, this was an offense within the

immediate view and presence of the court." Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77; Baker v. State (Ga.) 9 S. E. 743, 4 L. R. A. 128, and note. In the case of Savin, Petitioner, 131 U. S. 267, 9 Sup. Ct. 699, the supreme court of the United States held that, "within the meaning of section 725 [relating to contempt], the court, at least when in session, is present in every part of the place set apart for its own use and for the use of its officers, jurors, and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court." See, also, Gould & T. Notes, Rev. St. U. S. p. 203, § 725. That was a proceeding for contempt in attempting to deter a witness from testifying for a party in whose behalf he was summoned, and offering him money not to testify against the defendant. This occurred while the defendant was not in the court room, but in the hallway of the courthouse; and it was held to be misbehavior in the presence of the court. In the case at bar, the offense was committed while the court was in actual session. The witness was brought before the court after his refusal to testify. What was sworn to before the grand jury was repeated to the court, in his presence, and was not denied by the defendant. The defendant was thereupon instructed to answer the questions put to him; was again sent before the grand jury, with the district attorney; certain other questions, which have been the subject of discussion, were there repeated to him, which he refused to answer; and he was thereupon adjudged guilty of contempt, after being asked in open court why the judgment of the court should not be pronounced against him. He was defended upon the ground that the questions put to him were privileged, and that, if he answered the questions put truthfully, they would have a tendency to convict him of a criminal offense, or to implicate him in the crime charged against Dingens and Corby, who were charged with the offense under investigation, and against whom, only, the investigation was being made. The defendant still refusing to answer, and claiming exemption from so testifying, he was summarily convicted of criminal contempt, and was ordered into the common jail of the county of Tompkins until he did answer said questions, and purge himself of the contempt of which he was declared guilty, not to exceed 30 days' time.

All of the proceedings before the grand jury and before the court were part of the record at the time the decision was made. On Saturday morning the court took a recess until the following Thursday, and the grand jury were dismissed until that time. On Saturday writs of habeas corpus and of certiorari were issued by Hon. Walter Lloyd Smith, one of the justices of this court, and the sheriff of the county in which the prisoner was being detained was commanded to bring the prisoner before said justice at a court then being held in the village of Watkins, in the county of Schuyler. The writ of habeas corpus was undoubtedly issued to get possession of the body of the defendant in that court, and the writ of certiorari to bring up the record and the mandate upon which the defendant was being detained in the county jail of Tompkins. That record and mandate show upon their face that the defendant was being

detained in the county jail of Tompkins county for a criminal con-
tempt. The opinion of the learned justice shows that he had
knowledge at that time that the oyer and terminer was still in ses-
sion, for in that opinion he suggests "that the defendant can purge
himself of contempt by again coming before the same grand jury
and answering," etc., or, "declining to answer, saying that to do so
would tend to criminate himself." This, in my judgment, with all
due respect to the learned justice before whom the proceedings were
being had, was an unintentional, and yet an unauthorized, infringe-
ment upon the rights of the oyer and terminer continuing in ses-
sion in the county of Tompkins, and is a plain violation of the stat-
ute. Until the grand jury is finally actually discharged from the
work of the oyer and terminer, or the court in session, the court con-
tinues, and the absence of the judge and of the jury is not a termina-
tion of the court within the meaning of the statute. County Law,
Rev. St. (8th Ed.) p. 2793, § 26; General Municipal Laws, Dick. &
C. p. 68, § 98; People v. Sullivan, 115 N. Y. 185, 21 N. E. 1039;
People v. Barrett, 56 Hun, 351, 9 N. Y. Supp. 321; In re Gannon
(Cal.) 11 Pac. 240. It has been held that the absence of the judge
from the oyer and terminer for seven days does not obstruct the ses-
sion of the court. Com. v. Bannon, 97 Mass. 214, and cases there
cited. The question of the right of another court to intervene was
directly decided in the case of People v. Fancher, 4 Thomp. & C.
467, 2 Hun, 226, at the general term in the first department, where
Westbrook, writing the opinion, said that the interference by an-
other judge was a violation of the statute; and in that case, where
the prisoner had been taken out of the jail during the session of
the court on a writ of habeas corpus and a writ of certiorari, and
discharged from contempt, he was remanded to the county jail, and
the decision of the justice discharging him was reversed. Daniels,
J., and Davis, P. J., both concurred. Davis, P. J., said:

"I concur, secondly, upon the ground that the writ should have been made
returnable before the oyer and terminer of Kings county; and, when it
appeared to the judge that that court was in session, the writ should have
been dismissed as improvidently granted, or the hearing thereon should
have been sent before the oyer and terminer. This was required both by
the statute and by the comity due to a tribunal of concurrent jurisdiction in
such proceedings."

Westbrook, J., reaffirmed this decision in the case of People v.
Liscomb, 3 Hun, at page 779.

Under the revision of the county laws of 1892, chapter 686, § 99,
provides:

"During the session of the oyer and terminer in any county, no person de-
tained in the county jail of such county, upon a criminal charge, shall be
removed therefrom by a writ of habeas corpus, unless such writ shall have
been issued by or shall be made returnable before such court."

This seems to be an absolute suspension of the writ of habeas
corpus, and of other outside control of the proceedings in the oyer
and terminer while in session.

Under these circumstances, during the excitement of this investi-
gation, I deeply regret that the learned justice before whom the
defendant was taken felt it his duty to write an elaborate opinion

—which, without his fault, was published and circulated in Ithaca —erroneously instructing the defendant as to his rights before the grand jury, and informing this court what it was its duty to do upon the defendant's presenting himself again for examination; thus, as I believe, unintentionally obstructing the investigation there being had, and unintentionally, in effect, giving other witnesses an erroneous intimation of the manner in which an examination could be defeated by silence. Section 99 of the county law was re-enacted from the Laws of 1847, as found in 3 Rev. St. (5th Ed.) p. 1066, § 27. Section 26 of that statute provides what may be done within 24 hours after the final discharge of the grand jury, and section 27 says:

"After the court of oyer and terminer shall commence its sittings in any county, no person detained in the common jail of any such county, upon a criminal charge, shall be removed from it by a writ of habeas corpus," etc.

This section is found in the General Municipal Laws of New York, compiled by Dickinson & Cuming (page 69), published in 1892; and a direct construction of that statute was given by the general term in People v. Fancher, 4 Thomp. & C. 467, which is also reported in 2 Hun, 226, and reviewed in People v. Liscomb, 3 Hun, 760. This of itself would seem to have been a sufficient reason for letting the oyer and terminer exercise control of its investigations and of defendant while in jail, during the session of this court; and, upon the facts having been presented to the learned justice, this case ought to have been peremptorily dismissed, or sent back to the oyer and terminer.

The learned justice undoubtedly misapprehended the fact of the knowledge of the oyer and terminer of all of the proceedings before the grand jury, and must have been misled also with reference to his authority or jurisdiction to examine the case upon the merits, or, indeed, to examine it at all, except to see "why the defendant was detained in custody, and whether the mandate was regular upon its face." When it was shown by the district attorney, under section 2032 of the Code of Civil Procedure, that the defendant was being detained upon a commitment for a criminal contempt, defined in section 8 of this act, which has already been quoted, it was then the duty of the justice, without further examination of the question, to forthwith make a final order remanding the prisoner to the jail from which he was taken, when he had ascertained that the commitment was made by a court having jurisdiction to commit for contempt; and that such authority was specifically and plainly charged in the commitment before him. There seems to have been a further misapprehension on the part of the learned justice in passing upon the rights of the defendant to refuse to testify before the grand jury, assuming, as he did in his opinion, to do this for the reason that the case was being heard upon a certiorari, as well as upon a writ of habeas corpus. If that opinion is to be strictly construed as the law of this state, it would absolutely end, before the grand jury, an examination of any one of these students. All each student would have to do would be to

repeat that, if he were to disclose what he knew about the offense committed, in his opinion it would have a tendency to implicate him in the commission of the crime itself; leaving the witness, not the court, to be the judge of the facts upon which that opinion is based. That cannot be, and certainly is not, the law of this state. The opinion ought not to have been written or published, and the determination of the oyer and terminer should not have been reviewed in that proceeding. In the case of People v. Cassels, 5 Hill, 164, Bronson, J., said:

"The judgment or decision of a court or officers having competent jurisdiction cannot be reviewed on habeas corpus; but, if the decision be erroneous, the remedy is by certiorari or writ of error," viz. (to a higher court).

"Accordingly, where the return to a habeas corpus shows that the person sought to be released was detained under a commitment by a magistrate for contempt as a witness in refusing to answer questions relating to a criminal complaint, held: That the officer before whom the writ was returnable had no right to inquire into the truth of the facts adjudged by the committing magistrate, nor whether the questions put to the witness were proper, nor whether he was privileged from answering." Rap. Contempt, c. 4, p. 222, and authorities cited.

In the case of Spalding v. People, 7 Hill, 301, Nelson, C. J., said:

"A fine imposed upon a party by a court of chancery for a willful violation of an injunction is not affected by his discharge under the bankruptcy law, and where a court commissioner—after the party had been imprisoned for monpayment of such fine—granted a habeas corpus, and made an order releasing him from custody, on the ground of having been discharged under the bankruptcy law, held, that the order was a nullity."

In the case of People v. Sheriff of New York, 29 Barb. 622, Ingraham, J., writing the opinion of the court, held:

"On a habeas corpus in case of commitment for contempt only two questions can be examined: First, as to the jurisdiction of the court or officer making the commitment; and, secondly, as to the form of commitment. The court has no power to inquire into the justice or propriety of the commitment. Nor can the supreme court review, upon certiorari, the judgment of a court ordering a commitment for contempt."

See, also, Ex parte Percy, 2 Daly, 530.

In the case of People v. Liscomb, 3 Hun, 760, Westbrook, J., referring to the case of People v. Fancher, supra, said:

"In the very recent case of the People v. Fancher the writer of this opinion had occasion to examine this same question, and nothing has transpired to shake his confidence in the soundness of the views therein expressed. Every consideration of public policy, and the express language of the statutes, require us to hold that the judgment of a competent court—competent by reason of its having jurisdiction of the subject-matter and of the party—cannot be practically reversed and annulled by any officer empowered to grant a writ of habeas corpus. Plain words should not be refined away by legal subtlety, and when our written statute law emphatically declares that 'no court or officer, on the return of any habeas corpus or certiorari, issued under this article, shall have power to inquire into the legality or justice of any * * * judgment' 'of any competent tribunal of civil or criminal jurisdiction,' it is but our simple duty to obey its mandate, and not permit a power to be assumed, which our statutes declare the officer or tribunal granting the writ does not possess."

In the case of People v. Protestant Episcopal House of Mercy, 128 N. Y. 180, 28 N. E. 473, Ruger, C. J., said:

"Where, in proceedings by habeas corpus, it appears that the person is held in custody under a commitment issued by a magistrate, the only inquiry is whether the magistrate had jurisdiction of the case, and authority to pronounce the judgment for the cause assigned. The decision of the magistrate may not be reviewed, and so it is not essential to return the evidence on the trial. Code Civ. Proc. §§ 2032, 2034. If the process be valid upon its face, the burden of impeaching its validity rests upon the prisoner," viz. upon appeal.

I have thus far, as I believe, carefully reviewed the important questions which are presented by the issuing, and examination upon the contempt proceedings before the learned justice, of the writs of habeas corpus and certiorari upon which the defendant, Taylor, was taken from the common jail of Tompkins to the courthouse in the county of Schuyler; and I have done this, as I hope, in the kindest spirit, for the reason and with the purpose of correcting the false impressions made and inferences which have been drawn by the proceedings before, and from the opinion of, the learned justice who reviewed the action of the oyer and terminer. Nobody can hope, and, indeed, all must despair of even attempting, to correct the opinions of the law of the press. Frequently it seems to be the case that the editor or the reporter who knows least about the law or the facts in a legal proceeding is the person who assumes to know most, and succeeds in getting everything so far jumbled and perverted as to be undistinguishable as the case before the court; and it seems absolutely impossible for the most intelligent and honest of them, who are not educated lawyers, to comprehend or reproduce correctly anything that is said in courts of justice. Knowing nothing of the law, perverting and garbling the facts, their conclusions are usually unwarranted and erroneous; and their criticisms are too often either intended to, or do in fact, disturb, frustrate, and very frequently absolutely destroy the most earnest and labored efforts of the courts to bring offenders to punishment.

As to whether the defendant, Taylor (or other persons who have knowledge of material facts of which they should put the grand jury in possession for the purpose of producing an indictment against the real offenders), can be compelled to testify, depends upon a variety of circumstances, which perhaps may as well be reviewed at this time, and disposed of so far as this court is concerned. It is claimed that Taylor cannot be compelled to testify before the grand jury, and that privilege is based upon the theory that he is protected from giving before any tribunal any evidence which may tend to criminate himself, or to show that he was a participant before the fact, which, by the terms of the Penal Code, now makes him a principal to the crime. This is erroneous and illusive, as will be seen by an examination of the law. Article 1, § 6, of the constitution of the state of New York provides:

"No person shall be subject to be twice put in jeopardy for the same offence; ·nor shall he be compelled in any criminal case to be a witness against himself."

This provision was carried into the Revised Statutes (2 Rev. St. p. 405, § 71), and upon the adoption of the Code was codified under section 837, as follows:

"But this provision does not require a witness to give an answer, which will tend to accuse him of a crime or misdemeanor, or expose him to a penalty or forfeiture; nor does it vary any other rule, respecting the examination of a witness."

Upon the adoption of the Code of Criminal Procedure, in section 10, the following language is used:

"No person can be compelled in a criminal action to be a witness against himself, nor can a person charged with crime be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."

It will be observed, upon an examination of the cases construing these provisions of the constitution and the statute, that this privilege only extends to a witness when the evidence is to be used against him; that it cannot be used as a shield against disclosure of crimes committed by other persons, where the party himself was not connected with the crime, and had no knowledge of any of the qualities of the act or crime committed by others. If what he did was done innocently, although the act led up to and furnished the instrument of the crime, still, if his acts were innocent ones, and without any intent himself to commit a crime, no criminal intent can attach to those acts, and he cannot be punished for them. Dehn v. Mandeville, 68 Hun, 335, 22 N. Y. Supp. 984; Hewitt v. Newburger, 141 N. Y. 533, 36 N. E. 593. It is only when he is a guilty participant in, and has guilty knowledge of, the crime, with intent to commit it or conceal it, that he becomes an offender. In the notes collected under article 1, § 6, of the constitution of this state, we find the following:

"Nor is a person protected from testifying in a criminal case against another, on the ground that his testimony may tend to implicate him in the crime, provided he is protected by statute against the use of such testimony on his own trial." People v. Kelly, 24 N. Y. 74.

It was held at one time that—

"An act requiring parties to make discovery on oath concerning an indictable offense, but forbidding the answers from being used in evidence against them, is unconstitutional." Perrine v. Striker, 7 Paige, 598.

But this last doctrine was expressly overruled by the court of appeals in the case of People v. Sharp, 107 N. Y. 427, 14 N. E. 319.

It will be seen upon an examination of these cases that there are two conditions, upon either one of which the witness is protected, and is therefore not privileged: First, when he is not charged with the crime, and his evidence before the grand jury is such that he could not possibly have been guilty of a criminal offense; secondly, when he is exempt by statute or by operation of law from prosecution upon the evidence which he gives before the grand jury. I am not unmindful, in this discussion, of the strin-

gent rule laid down in the case of People v. McQuade, 110 N. Y. 284, 18 N. E. 156, which reads as follows:

"Every statutory provision intended for the benefit of the defendant in a criminal action confers a substantial right, which may not be disregarded without his consent."

In the case at bar the evidence shows that Taylor was put before the grand jury, by the district attorney, with the express understanding that he was willing to testify to every fact within his knowledge which in any manner could be used against the real offenders charged with the crime; and, after conclusively showing that he either had no knowledge of the crime, or that he was concealing that knowledge by perjury, to shield the real offender, he was asked if he knew where the jugs in which the chlorine gas was generated were purchased. This, and questions of a similar character with reference to the jugs, he declined to answer, upon the ground that to answer truthfully would tend to criminate him. He had been instructed by the court that the prosecution was not against himself, and that he must tell all that he knew about the transaction as against the offenders. The court having his testimony before it, with an opportunity of judging of the quality of his guilt or innocence of the offense charged, the district attorney in open court had promised him exemption from indictment or punishment upon any evidence which he should give. Under these circumstances, all of which are spread upon the record of the oyer and terminer, Taylor, without objecting, went into the grand-jury room, under a subpoena, to testify.

There are two grounds upon which this court predicates the authority to punish Taylor for contempt: First, upon the ground that by going before the grand jury, testifying with the exemption offered, he was bound to answer all relative and proper questions put to him, and he could not shield the offenders upon the pretext of shielding himself; secondly, the court, upon the whole evidence, decided and determined that the evidence given before the grand jury and the proceedings had in open court clearly disclosed the fact that Taylor was not guilty of the commission of a criminal offense if his evidence before the grand jury was true, and that there was no need of shielding himself, nor could he use that shield to protect the supposed real offenders, one of whom, Dingens, was his roommate. This became a question of fact for the court to determine upon the evidence given by Taylor himself.

First, then, could the evidence be used against Taylor if an indictment hereafter were to be procured against him? The authorities are ample to show that the evidence could not be used against him, should this grand jury, in defiance of the exemption offered, indict him, and a trial was sought to be had on that indictment. He was regularly subpoenaed as a witness, and put before the grand jury by the district attorney. It is certainly clear that, if exempted by statute from punishment, he could be made to testify. Perrine v. Striker, 7 Paige, 598; People v. Kelly, 24 N. Y. 4, 74; People v. Sharp, 107 N. Y. 427, 14 N. E. 319; Rap.

Contempt, p. 98, § 76. Is he exempt by operation of law? In the case of People v. McMahon, 15 N. Y. 384, the prisoner was arrested by the constable, without a warrant, on suspicion of being the murderer of his wife. The constable took him before the coroner, who was holding an inquest on the body of the murdered woman. He was sworn and examined as a witness. It was there held that the evidence given before the coroner was not admissible on the prisoner's trial for the murder. The same rule was held in the case of People v. Mondon, 103 N. Y. 211, 8 N. E. 496. Mondon was taken before the coroner's jury, testified, and that evidence was used upon his trial for murder, and the judgment of conviction was reversed. This doctrine was also upheld in the case of People v. Sharp, 107 N. Y. 427, 14 N. E. 319. In this last case it was held, at page 446, 107 N. Y., and page 319,.14 N. E.:

"That a person who yields from the necessity of obedience cannot be said to have the power of acting by his own choice, and under such circumstances the witness must be deemed to speak for the safety of his person, and in view of the indemnity which the law promises."

The same doctrine was held in the case of People v. Clark (O. & T.) 14 N. Y. Supp. 642, where the case of People v. Singer, 5 N. Y. Cr. R. 1, was discussed and upheld, holding practically the same doctrine. That case is also reported in 18 Abb. N. C. 96, followed by a note on the subject, showing that the same rule is upheld in other states. The question was again discussed in the case of People v. Spencer, 66 Hun, 149, 21 N. Y. Supp. 33, and is based not only upon the statutory ground, but upon the implied exemption when used as a witness before the grand jury. Herrick, J., says:

"When a witness is used under such circumstances, the utmost good faith should be observed in dealing with him, and the spirit, as well as the letter, of the law should be regarded. Here, it seems to me, both were violated," and many cases are cited.

See, Rap. Contempt, p. 99, § 76, where it was held that an accomplice, who had been led to give evidence for the government by an express or implied promise of pardon, contracts to make a full statement, can keep back nothing, and should be allowed no privileged communications; citing Alderman v. People, 4 Mich. 414, 1 Best, Ev. p. 225, note; People v. Spencer, 66 Hun, 149, 21 N. Y. Supp. 33; People v. Singer, 18 Abb. N. C. 96; People v. Sharp, 107 N. Y. 427, 14 N. E. 319. In the case at bar, the doctrine that the witness may claim .the privilege not to testify upon the ground that the testimony so given may tend to criminate him, and that he is to be the sole judge of that fact, cannot be upheld under the authorities in this state; nor is it the fundamental law of this or any other civilized country. Whether he is privileged is a question of fact for the court.

It is held in the case of People v. Mather, 4 Wend. 230:

"The question must be such that the answer to it, which he may be required by the obligation of his oath to give, will directly show his infamy, and the court must see that such will be the case, before they will allow the excuse to prevail." Page 232.

In the case of Curtis v. Knox, 2 Denio, 341, the court of errors,. approving the doctrine of People v. Mather, supra, said:

"If he could be, then his oath that he was apprehensive that his testimony might lead to his conviction is conclusive, for the court cannot judge, without a knowledge of his agency in the transaction, whether it was of a character to render him culpable or not."

In the case at bar this court had knowledge of all the evidence before the grand jury, and that which was obtained in open court.

The same doctrine was held in the case of Forbes v. Willard, 37 How. Pr. 193, where Daniels, J., said:

"Where a witness declines to answer questions proposed to him on the ground that his answers will have a tendency to criminate him, it is the province of the court to determine whether that will probably be the effect of the answers, if they are required to be given;" citing Cowen & Hill's Notes.

2 Phil. Ev. pt. 2, pp. 737, 739, and cases there cited.

In the case of Byass v. Smith, 4 Bosw. 679, Bosworth, J., said:

"The court is to determine, as a question of law, whether the question, if answered in any form, would form a link in the chain of evidence. The oath of the witness, therefore, is unnecessary to the fact that his answer must criminate him. By such an oath he would either swear to a conclusion of law, or admit impliedly the very fact he was endeavoring to conceal."

It was held in the case of Butts v. Village of Lowville, 15 N. Y. Wkly. Dig. 144, that a waiver of the privilege cannot be inferred from witness not specifying the ground upon which he, personally, objected; that stating the ground is equivalent to a confession of the offense.

In the case of Fellows v. Wilson, 31 Barb. 162, Pratt, J., in the general term of our own department (Old 5th Dist.), held: "When a witness claims his privilege on the ground that the answer may tend to criminate him, it is for the court to decide whether it is a question for such claim," citing Curtis v. Knox, 2 Denio, 341, and then saying: "And the court must decide this, taking into consideration the evidence which may be material upon the issue."

In the case of Youngs v. Youngs, 5 Redf. Sur. 505, Rollins, S., said:

"Courts are not bound, as of course, to grant to a witness the claim of privilege from giving incriminating testimony, simply because he swears that the necessity for its exercise has arisen, but themselves have an authority and discretion in the premises; and they should not concede the claim where the nature of the question does not, under the particular circumstances apparent at the time, immediately suggest the reasonableness of the claim and the injustice of denying it."

In the case of Manufacturing Co. v. Taussig, 33 Hun, 32, Davis, P. J., said, speaking of the prisoners:

"They are not bound to criminate themselves, and each may claim the personal privilege of refusing to answer. On such an examination it would be for the judge to determine, as it would be on a trial at circuit, whether the questions are such as they are not bound to answer." Page 33.

In the case of Friess v. Railroad Co., 67 Hun, 205, 22 N. Y. Supp. 104, at page 213, 67 Hun, and page 104, 22 N. Y. Supp., Martin.

J., fully discusses the proposition, and settles the law, at least in this district:

"It is an old and established principle of the law of evidence that, where it reasonably appears that the answer to a question will have a tendency to expose the witness to a criminal charge, he is not bound to answer. This is so, even where the fact in regard to which he is interrogated forms but a link in the chain of testimony which would convict him; and he is protected without being compelled to explain how he would be criminated by the answer. In respect to this claim of privilege there are two extremes which ought to be avoided: First, that of requiring from a witness, who is honestly claiming the privilege, any explanation whatever of his reason for refusing to answer, if the court can see how such answer may fairly and reasonably tend to criminate him; second, that of permitting a witness to interpose the shield of apprehended peril as a protection against every question which he is disinclined to answer, although there be nothing in the circumstances of the case which in the least suggests the danger,"

—Citing the Youngs and Mather Cases, and then holding:

"Whether an answer may tend to criminate the witness is a point which the court may determine, under all of the circumstances of the case, when the protection is plain, without requiring the witness to explain how the effect is to be produced. In cases of this kind the court must see, from the circumstances and nature of the evidence which the witness is called upon to give, that reasonable ground exists for apprehending danger to the witness from being compelled to answer."

The same doctrine was held in Dehn v. Mandeville, 68 Hun, 335, 22 N. Y. Supp. 984, where the exemption was claimed from the verification of a pleading. Byass v. Smith, 4 Bosw. 679; Perrine v. Striker, 7 Paige, 598. The same doctrine is held in all of the elementary works on evidence. Tayl. Ev. § 1457; 1 Best, Ev. p. 19 (marg. p. 176) § 128,—where the question is discussed in that and the preceding sections, and the same conclusion reached. See, also, Rap. Contempt, p. 101, § 79, where Chief Justice Marshall, on the trial of Aaron Burr, laid down the rule as follows: "It is the province of the court to judge whether any direct answers to the questions which may be proposed will furnish evidence against the witness;" and this is in direct line with all of the text-books which this court has had an opportunity to examine. State v. Duffy, 15 Iowa, 425; Janvrin v. Scammon, 9 Fost. (N. H.) 280.

Enough authorities have already been cited, and the question sufficiently discussed, to leave no doubt in the case at bar that Taylor was guilty of a contempt of court, for which he should be punished; and, as he cannot be liberated by habeas corpus or certiorari, the discretion of the court should be used with caution to admit him to bail on appeal. Code Cr. Proc. § 555, reads as follows:

"Nature of Appeal after Conviction. After the conviction of a crime not punishable with death, a defendant who has appealed, and where there is a stay of proceedings, but not otherwise, may be admitted to bail: First, as a matter of right, when the appeal is from a judgment imposing a fine only; second, as a matter of discretion, in all other cases."

Surely this discretion should not be exercised unless the judge can certify that there is a reasonable doubt as to the justice of the conviction, or that an error has been committed in the proceedings; and that can be determined only upon a review of all of the

facts and circumstances before this court at the time of the conviction. That application, therefore, should be made to this court, at least in the first instance. There may be a very grave question about the right of any other judge to release on bail, during the session of the oyer and terminer, under the statute and cases already cited and discussed; but that responsibility is not with this court, now, at least.