## McCORMICK v. SHERIDAN.

### No. 11,339; December 11, 1888.

20 Pac. 24.

**Contempt—In Petition for Rehearing—Disavowal.**—A petition for rehearing stated that "how or why the honorable commissioner should have so effectually and substantially ignored and disregarded the uncontradicted testimony . . . . we do not know. . . . . It seems that neither the transcript nor our briefs could have fallen under" the commissioner's observation. "There is not a scintilla of evidence to the contrary, and yet the honorable commissioner assumes," etc., and "in very euphuistic language says," etc. "A more disingenuous and misleading statement of the evidence could not well be made." "It is substantially . . . . untrue, and unwarranted." "The decision . . . . seems to us to be a travesty of the evidence." Held, that counsel drafting the petition was guilty of contempt committed in the face of the court, notwithstanding a disavowal of disrespectful intention.[1]

On proceedings against Frederick H. Waterman for contempt.

PATERSON, J.—On October 23, 1888, the judgment of the court below was affirmed herein, upon an opinion written by

---

[1] Cited and approved in In re Chartz, 29 Nev. 120, 124 Am. St. Rep. 923, 85 Pac. 356, 5 L. R. A., N. S., 916, and its principle extended to a case where, in the petition for rehearing, the person and motives impugned are those not so much of the judge as of the makers of the law he has decided to be constitutional.

Cited and approved in Lamberson v. Superior Court, 151 Cal. 464, 91 Pac. 102, 11 L. R. A., N. S., 619, where it is said that subdivision 4 of section 170 of the Code of Civil Procedure, while it allows the affiant, in an application for a change of judges, to state the fact if, as a fact, the judge has indulged in corrupt practices or ruled or decided through a corrupt motive, does not allow him to make such statements without supporting facts.

Cited and followed in Lamberson v. Superior Court, 151 Cal. 459, 91 Pac. 100, 11 L. R. A., N. S., 619, where the attorney had presented a scandalous affidavit to the judge in support of an application for a change of judges.

Cited and approved in Lamberson v. Superior Court, 151 Cal. 460, 91 Pac. 101, 11 L. R. A., N. S., 619, as being in accord with the views of the United States supreme court in Ex parte Terry, 128 U. S. 289, 32 L. Ed. 405, 9 Sup. Ct. Rep. 77, there quoted, as regards procedure.

Commissioner Belcher, concurred in by Commissioners Foote and Hayne, and adopted by this court: McCormick v. Sheridan, 77 Cal. 253, 19 Pac. 419. On November 23d a petition for a rehearing, signed, ''Shafter, Parker & Waterman, Attorneys'' for appellant, was filed herein. Upon reading the said petition we were surprised to find statements therein which were intended apparently to reflect on the good faith and diligence of the commissioner who had written the opinion. Among other things, the author of the petition said: ''The decision of the honorable commissioner, affirmed by this court, is wholly contrary to law and the evidence shown in the record here. How or why the honorable commissioner should have so effectually and substantially ignored and disregarded the uncontradicted testimony of unimpeached witnesses given at the trial, and shown in the transcript, we do not know, nor can we conjecture; that he has done so is evident. . . . . From the opinion upon which the decision is based, it seems to us that neither the transcript nor our briefs could have ever fallen under the observation or examination of the honorable commissioner. . . . . All of which, from the honorable commissioner's view of the law and the facts, must have been abandoned by McCormick, and were a fair prize to the first-comer. Yet Sheridan, more conscientious, perhaps, evidently had some doubts. . . . . There is not a scintilla of testimony to the contrary, and yet the honorable commissioner assumes that McCormick's residence and dwelling was on section 18. For what reason? we ask. . . . . The honorable commissioner, in very euphuistic language, says that 'on the 5th of December, some time after sundown, defendant entered upon the disputed quarter section.' . . . . A more disingenuous and misleading statement of the evidence, it seems to us, could not well be made than this. It is substantially, and for all the purposes of this investigation, untrue, and utterly unwarranted by the facts shown in the testimony. . . . . We forbear further comment upon what seems to us to be a remarkable perversion of law applied to conceded facts of record. We ask of this honorable court a fair examination of the record testimony. . . . . With all due respect to the honorable commissioner, and to this honorable court, the decision herein,

as evidenced by the opinion of the honorable commissioner, seems to us to be a travesty of the evidence and the uncontradicted testimony. . . . . Half-truths are often as misleading as whole untruths.''

On November 26, 1888, an order was made herein, directing James McM. Shafter, Charles H. Parker and Frederick H. Waterman, members of the firm of Shafter, Parker & Waterman, attorneys and counselors at law, to appear before this court at its courtroom in the city of San Francisco, on the tenth day of December, 1888, at 10 A. M., then and there to show cause why they, and each of them, should not be punished for contempt. In obedience to the order said attorneys appeared before the court, and, it satisfactorily appearing from the statements of Messrs. Shafter and Parker that they were in nowise to blame for the language used in the petition—in fact, had nothing to do with its preparation —the order, as to them, was discharged: 20 Pac. 26, post, p. 39. The respondent Waterman filed a written statement and made a verbal explanation, in which he disavowed emphatically any intention to cast reproach or reflection on any of the commissioners, or on any member of this court, or to show disrespect or incivility in any sense whatever. His sole object, he said, was to put the matter before the court in as forcible a manner as possible, without disrespect, so that the individual members of the court would be induced to make a searching examination of the record. He admitted, however, that, upon reflection, the language was improper, and liable to the construction which the court evidently placed upon it.

These disclaimers by the respondent we accept as true, so far as it is possible to do so without giving a constrained construction to the language used by him in his petition for a rehearing. It may be that he acted in good faith, and without any design, wish, or expectation of committing any contempt, and we accept his explanation in palliation of the offense; but the language we have quoted from his petition for a rehearing is too plain and direct in its imputation of negligence and bad faith to authorize us in taking the disavowal of the defendant as sufficient to purge him of con-

tempt.  As was said in In re Woolley, 11 Bush (Ky.), 109:
"We recognize to the utmost reasonable limit of its applica-
tion the rule that a supposed contempt, consisting in mere
words, which are, apparently, intended to be scandalous and
offensive, but which are at all susceptible of a different con-
struction, may be explained or construed by the speaker or
writer, and that, upon his sworn disavowal of intention to
commit a contempt, proceedings against him must at once be
discontinued.  But this rule does not control where the mat-
ter explained or written is of itself necessarily offensive and
insulting.  In such a case the disavowal of an intention to
commit a contempt may tend to excuse, but it cannot and
will not justify, the act: People v. Freer, 1 Caines (N. Y.),
485.  An intention to be offensive may be disavowed, and the
particular language used to make the charges or imputations
may be withdrawn, but the effect of the paper or publication,
the ideas conveyed, the charges and imputations made, may
remain.''  The 'effect of the respondent's disclaimer is weak-
ened very much by the statement of the respondent Parker,
in which he says that, when the respondent Waterman came
to him with a draft of the proposed petition for rehearing,
he, Parker, called his attention to the objectionable matters
contained therein, and advised him to omit them therefrom.
''The petition for a rehearing is not a pleading, but an argu-
ment addressed to the court, and to the individual members
of the court. . . . . The petition was the counsel's argument
in support of the motion for a rehearing, and the counsel, and
not the client, is responsible to the court for the character of
the argument, and for the insinuations, imputations, and
charges which the petition may contain.  The contempt com-
mitted in this way is a contempt in the face of the court'': In
re Woolley, supra.

Upon the facts contained in the petition for rehearing, and
quoted above, we adjudge the respondent Waterman guilty
of contempt, committed in the face of the court; and, as a
punishment therefor, it is ordered and adjudged that said
Waterman pay a fine of $200.  It is further ordered that said
$200 be paid to the clerk of this court on or before the twen-
tieth day of December, 1888, and that, in default of such
payment, he, Frederick H. Waterman, respondent, be im-

prisoned in the county jail of the city and county of San Francisco one day for every $20 of said fine remaining unpaid.

We concur: Searls, C. J.; McFarland, J.; Thornton, J.

I dissent: Sharpstein, J.