THE PEOPLE OF THE STATE OF NEW YORK EX REL. DILWORTH CHOATE, v. GEORGE C. BARRETT, A JUSTICE, ETC., OF THE COURT OF OYER AND TERMINER FOR THE CITY AND COUNTY OF NEW YORK, RESPONDENT.

*Criminal contempt — a reporter of a newspaper who, intending to overhear their deliberations, conceals himself in a jury-room, is guilty thereof — what act is done in the presence of the court — jeopardy a second time for the same offense.*

A petit jury is a constituent part of the court, and the petit jury-room is an adjunct to the court, and where a person, for the purpose of overhearing what is said by the members of the jury, in their consultation previous to rendering a verdict, conceals himself in the jury-room and overhears such conversation, he is guilty of a contempt of court and of disorderly behavior in the presence of one of the constituent parts of the court while engaged in the business devolved upon it by law.

The presence of the judge is not essential to the commission of such a contempt.

A reporter for a newspaper, who had unlawfully intruded into a jury-room and overheard the consultation of the jury in reference to the verdict to be rendered by it, was discovered and brought before the court by which the facts were ascertained, and it was determined that the court had no jurisdiction to act in the then condition of the case and he was discharged. Subsequently, when proper proof was presented to the court, an order was issued that he show cause why he should not be punished for a criminal contempt. On the return of this order, it was claimed that the prior proceeding of the court discharging the reporter constituted such a determination as that the relator could not be a second time placed in jeopardy for the same offense.

*Held*, that such claim could not be sustained; that although section 10 of the Code of Civil Procedure states that a contempt committed in the presence of the court may be punished summarily, it does not provide that where the offense has been so committed in the presence of the court, but the judge has failed to see it, he must proceed without proofs or process.

The fact that, following the definition of a criminal contempt in the Penal Code there occurs the following words, which do not appear in the provision upon that subject in the Code of Civil Procedure, namely: "Behavior of a like character committed in the presence * * * of a jury while actually sitting for the trial of a cause, or upon an inquest or other proceeding authorized by law," does not show that it was the intention of the legislature to withdraw such conduct from the consideration of the court as a criminal contempt within the provisions of the Code of Civil Procedure.

WRIT of *certiorari* directed to issue by an order of April 5, 1890, made at a Special Term of the Supreme Court held in the county of New York, requiring Hon. GEORGE C. BARRETT, one of the

justices of the Supreme Court, assigned to and presiding at the Court of Oyer and Terminer, to return to the General Term of that court all proceedings had before him, and all orders, papers, proofs, testimony and affidavits concerning the commitment of one Dilworth Choate for contempt of court. It appeared by the return that while awaiting the end of the judge's charge a "World" reporter discovered where the jury so charged would be sent to hold their deliberation and concealed himself in the jury-room, where he remained until the jury entered the room for the purpose of deliberating upon their verdict, and there listened to the deliberation which took place among the members of that body.

*F. R. Coudert* and *Albert Reynaud*, for the relator.

*John W. Goff*, for the respondent.

VAN BRUNT, P. J. :

Little need be added to the opinion rendered by Mr. Justice BARRETT upon the return of the order to show cause why the relator should not be punished for contempt.

We think that it is therein conclusively established that a petit jury is a body directly and immediately a constituent part of the court, and the petit jury-room an adjunct to the court; and that the petit jury is as much a part of the court as the judge himself who presides.

The judge is not the court; the court-room is not the court; the jury-room is not the court; nor is the petit jury the court. But the court consists of all these combined; and wherever any constituent part of the court is engaged in the prosecution of the business of the court according to law, there the court is present.

It might as well be said that a contempt committed before a judge holding a court, and conducting the business devolved upon the court by law in the absence of the jury, is not committed in the immediate view and presence of the court because of the absence of the jury, a constituent part of the court, as to say that a contempt committed in the presence of the jury while they are engaged in performing the functions devolved upon them by law, and which must be performed out of the sight and hearing of the judge or anybody else, is not committed in the immediate view and presence of the court.

It seems to us to be clear that any disorderly, contemptuous or insolent behavior committed in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law must be a contempt committed in the immediate view and presence of the court. If the presence of the judge is essential to the commission of a contempt, we can see no reason why the presence of the jury is not equally indispensable, because each are necessary constituent parts of the court, and each have functions which may in one case, and must in the other, be performed without the presence of both.

It would seem that the provisions of law regulating criminal contempts were intended to protect the court during the whole, and each and every part, of its sittings from disorderly, contemptuous or insolent behavior.

There is another point, however, raised by the relator which requires, perhaps, a more extended consideration, not because there is any doubt as to the disposition which should be made of the question, but in order that the facts may distinctly appear. It is urged that the relator could not be a second time placed in jeopardy for the same offense under the same provision of law. The facts attending the commission of the contempt seem to be as follows :

There had been on trial, proceeding for several days before the Court of Oyer and Terminer, a criminal action which had excited considerable public attention. The trial had so far progressed that the evidence had been finished, the counsel had summed up, the court had charged the jury, and the jury had retired to the jury-room for deliberation. The judge presiding at the trial had left the bench and was awaiting the deliberations of the jury in another room in the court-house. After the jury had been deliberating for a period of about two and a half hours, and had written a communication to the presiding judge requesting some further instructions in regard to the law, the jurors discovered the relator, a reporter of one of the daily newspapers, concealed behind some curtains in the jury-room, where he had, prior to the entry of the jury into the jury-room, secreted himself for the purpose of taking notes of their deliberations and publishing the same in the newspaper which he represented. Immediately upon this discovery the

jurors called in one of the officers of the court who had charge of the jury, and delivered this person into his custody. The officer immediately notified the judge, who returned to the court-room, and the relator was brought before him. He was questioned by the judge and was ordered to deliver up the notes which he had taken of the deliberations of the jury, and did so. He was requested to promise not to publish any of the deliberations of the jury, which he refused to do. He was then discharged from custody, and published that which he had thus stólen. Subsequently an order to show cause was issued by the said judge why he should not be punished for a criminal contempt. The relator presented affidavits denying that he had committed any contempt or intended to commit any. After consideration the relator was adjudged guilty of a criminal contempt, and a commitment was issued by the Court of Oyer and Terminer directing the sheriff of the county of New York to hold him in custody in the common jail for thirty days, and in default of payment of a fine of $250 for thirty days additional.

Upon the hearing of the order to show cause, the relator objected that he had already been arraigned and discharged for the same alleged offense, also, that the act with which he was charged does not constitute a criminal contempt under the provisions relative thereto, and that the court had no jurisdiction of the premises.

It is undoubtedly true that a person cannot be a second time placed in jeopardy for the same offense under the same provision of law. And it is urged, upon the part of the relator, that the first proceedings, however summary, were as fully complete in themselves and as thorough proceedings to punish for the alleged offense as though they had been conducted with all the formalities of a trial before a jury and a consequent dismissal.

This proposition we think to be entirely erroneous. There was no trial at all. The relator was brought before the court, in order that the court might make an inquiry into the disturbance which had arisen and by which the deliberations of the jury had been interfered with. It was necessary for the court to ascertain whether such a condition of affairs had arisen as to preclude the jury from the further consideration of the questions which had been committed to them for decision. All that the court did in the investigation which it conducted was to ascertain the facts and determine whether

those facts called upon it then and there to act, and if so, what action was necessary.    The judge, upon ascertaining the facts, released the relator from custody because he was of the opinion that he had no jurisdiction to act in the then position of the case; and when proof was presented before the judge upon which he could call upon the relator to answer, he did so call, and the relator having been adjudged guilty of a flagrant contempt, he was punished therefor.    The judge in no manner determined, in a proceeding of which he had entertained jurisdiction, that the relator should not be punished.    All that he determined was that, in the then condition of the case, he was not in a position to adjudicate thereon, and the relator was permitted to depart.

It is true that the judge said to the relator that if he had taken any notes, "I direct you to produce them, and if you refuse, I then will act," but nothing was said as to what action could or would be taken.    The statement of the learned judge in regard to the decision in the *Munsell Case* was a mere expression of opinion, not an adjudication.    It could not possibly be an adjudication unless he had acquired jurisdiction of the relator and passed upon his offense. The relator, therefore, was not put in jeopardy by reason of the proceedings taken upon the night when his disgraceful action was discovered.

It is true that section 10 of the Code of Civil Procedure states that a contempt committed in the presence of the court may be punished summarily, but it does not say that it must be so punished, or that, although the offense has been so committed in the presence of the court, but the judge has failed to see the same, he must proceed without proofs or process.    The fallacy upon which the whole of this point rests seems to be, that an offense cannot be committed in the presence of the court if the judge does not see it, and cannot assert the facts in his warrant of commitment of his own knowledge that the offense has been committed.

Suppose, for example, that during the progress of a trial, while the judge is on the bench and the jury in its seat, a communication is made to one of the jurymen which the judge does not see, but of which he is informed.    Can he commit the offender without some proof of the commission of the offense?    And yet even the most critical would say that this offense was committed in his immediate

presence, and still he would be entirely unable to certify of his own knowledge that the offense had been committed. It would be necessary that he should have proof, and he is entitled to the time necessary to enable him to have the proof presented before him in a legal and formal manner.

Our attention is called to the difference between the definitions of a criminal contempt given in the Penal Code and the Code of Civil Procedure. In both a criminal contempt is defined to be disorderly, contemptuous or insolent behavior committed during the sitting of the court, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority. In the Penal Code (§ 143) is contained the further definition: "Behavior of a like character committed in the presence * * * of a jury while actually sitting for the trial of a cause, or upon an inquest or other proceeding authorized by law." This subdivision does not appear in the Code of Civil Procedure, and it is urged that it was the intention of the legislature to withdraw such conduct from the consideration of the courts as a criminal contempt. But giving the broadest interpretation possible to the subdivision, what the first clause cited of this provision was intended to mean is not entirely apparent, because it is difficult to see how a contempt could be committed in the presence of a jury, while actually sitting for the trial of a cause, without being committed in the presence of the court, which is provided for in the previous subdivision, as juries do not sit in the trial of causes in the absence of the court. If the Code of Civil Procedure had been passed after the Penal Code, the argument might, perhaps, have had some force. But the Code of Civil Procedure was passed first, and the right to punish a contempt committed in the presence of the jury depended upon the well-accepted construction that, as the jury were a part of the court, contempts committed before them were committed in the presence of the court. In the Penal Code the codifiers seem to have attempted, without much success, to leave no possible ground for argument, so far as that Code was concerned, that the jury in its deliberations was a part of the court. It was by no means an expression of the legislative intent or the legislative opinion that such commitment did not come within the provisions of subdivision 1 of section 8 of the Code of Civil Procedure.

Upon the whole case, therefore, it seems to us that the court had jurisdiction to punish the relator for the contempt which he had committed, and that the writ of *certiorari* should be dismissed, with costs.

Brady and O'Brien, JJ., concurred.

Writ of *certiorari* dismissed, with costs.