[L. A. No. 2013. In Bank.—June 25, 1907.]

## CHARLES G. LAMBERSON, Petitioner, v. SUPERIOR COURT OF TULARE COUNTY, and W. B. WALLACE, Judge thereof, Respondents.

CONTEMPT — FILING AND PRESENTING AFFIDAVITS — CONTEMPT IN PRESENCE OF COURT.—A contempt of court consisting of the filing and presentation to the judge in open court of contemptuous affidavits is one committed in the immediate view and presence of the court, and a citation, timely made, to show cause why the party guilty of the contempt should not be punished does not require an affidavit to support it.

ID.—JUDGE ATTACKED NOT DISQUALIFIED IN CONTEMPT PROCEEDINGS.— A judge is not disqualified from sitting in proceedings in contempt merely because the alleged contempt itself consists in imputations upon his motives and attacks upon his integrity.

ID.—ATTACK ON INTEGRITY OF JUDGE—ATTORNEY PREPARING AFFIDAVITS —CHARGES MADE ON MERE BELIEF.—Affidavits filed in support of an application for a change of judges, containing imputations upon the motives of the judge before whom the cause is pending, and attacks upon his integrity which are based entirely upon the belief of the affiant, without any attempt being made to state the source of the affiant's information or the origin of his belief, are in contempt of court, and the attorney of the affiant who prepared and knowingly presented such affidavits to the court is equally guilty with his client of contempt.

APPLICATION for a Writ of Prohibition to the Superior Court of Tulare County. William B. Wallace, Judge.

The facts are stated in the opinion of the court.

Alfred Daggett, for Petitioner.

W. B. Wallace, *in pro. per.*

HENSHAW, J.—Petitioner was and is the attorney at law of John Bashore, who is plaintiff in two actions pending before the superior court of Tulare County. John Bashore made application for a change of judges in these actions, supporting his application by his own affidavits, verified before petitioner as notary public, and by petitioner filed with and presented to the court. Two of these affidavits were filed in

connection with separate applications for change of judges in one of the cases, while the third was presented in support of the application for a change of judges in the other case. Both actions are still pending. The first two applications were met with counter-affidavits and denied. The third affidavit contained substantially all of the alleged defamatory and contemptuous matter embodied in the preceding affidavits, and went even further in attacking the integrity of the judge. Upon presentation of this last affidavit, the judge, believing that he could not with self-respect longer sit at the hearing of these causes, announced that John Bashore could have a change of judges in any case pending in his court, whether theretofore denied or not, upon application, and without the filing of any affidavit. He then issued a citation to petitioner to show cause why he should not, as the attorney for John Bashore and as an officer of the court who had presented these scandalous affidavits, be punished for contempt in so doing. This citation to show cause set forth at length the proceedings had in the matter and the language of the affidavits which the court regarded as unwarranted, contemptuous, and deliberately designed to bring into disrepute himself as judge and the court over which he presided.

Petitioner then applied for and obtained from the district court of appeal an alternative writ of prohibition. The questions involved were considered by that tribunal, and, upon disagreement of the judges, the proceedings were certified to this court.

Dealing first with the questions of procedure which petitioner presents, this contempt (assuming for the moment that a contempt was actually committed) was one which took place in the immediate view and presence of the court, and the citation to show cause, which was timely made, did not require an affidavit to support it. The second and third affidavits were filed and presented to the judge in open court. In *McCormick* v. *Sheridan*, (Cal.) 20 Pac. 24, an attorney had presented to this court a petition for a rehearing, whose language reflected upon the author of an opinion written by one of the commissioners. Some days thereafter, when the matter of the petition had come under review, an order was issued from this court, which order was in fact a citation directed to the offending attorney and commanding his presence to show

cause why he should not be punished for contempt. A hearing was had and this court declared: "Upon the facts contained in the petition for rehearing, and quoted above, we adjudge the respondent Waterman guilty of contempt, committed in the face of the court." *In re Foote,* 76 Cal. 543, [18 Pac. 678], declares merely that in contempt proceedings, which contempt consisted of contumelious language addressed to the judge in the trial of a cause, an order adjudging an attorney in contempt made fifty days thereafter and in his absence, and without citation or notice to him of any kind, was improper, upon the ground that by its laches the court had lost jurisdiction. It is not in conflict with the rule and procedure applied in *McCormick* v. *Sheridan,* (Cal.) 20 Pac. 24, and if it were, *McCormick* v. *Sheridan* is the latest expression of this court upon the matter. *McCormick* v. *Sheridan,* moreover, is in full accord with the views of the supreme court of the United States expressed in *Ex parte Terry,* 128 U. S. 289, [9 Sup. Ct. 77], where it is said: "Jurisdiction of the person of the petitioner attached instantly upon the contempt being committed in the presence of the court and was neither surrendered nor lost by delay on the part of the circuit court in exercising its power to proceed. It was within the discretion of the court whose dignity he had insulted, and whose authority he had openly defied, to determine whether it should upon its own view of what occurred, proceed at once to punish him, or postpone action until he was arrested upon process, brought back into its presence, and permitted to make defense." In *People* v. *Barrett,* 121 N. Y. 678, [24 N. E. 1095], the respondent had secreted himself in the jury-room while the jury were deliberating and had taken notes of their proceedings. He was discovered and afterwards charged with having committed a contempt of court. By the supreme court (*People* v. *Barrett,* 56 Hun, 351, [9 N. Y. Supp. 321]) it was held that it was a contempt committed in the immediate view and presence of the court, and the court of appeals affirmed this determination. In *Hughes* v. *People,* 5 Colo. 436, an affidavit for a change of judges was presented to the court while in session by respondent's attorney, respondent, himself an attorney, being absent. The affiant was brought before the court by attachment, and the supreme court declared: "It was in the face of the court and

warranted the judge in taking cognizance of it summarily as though the words, instead of being written or read in court, had been spoken *in facie curiæ.*'' The contempt being one committed in the presence of the court, required no supporting affidavit. (Code Civ. Proc., sec. 1211.) The court could have proceeded upon it summarily, or by citation to show cause— the course here adopted—and could have allowed a showing in defense, extenuation, or mitigation. Nor is this matter in any wise controlled by subdivision 12 of section 1209 of the Code of Civil Procedure. While conceding to the legislature the fullest power in the matter of contempts to lay down rules of procedure, we repeat what was said in *In re Shortridge,* 99 Cal. 526, [37 Am. St. Rep. 78, 34 Pac. 227] : ''No authority has been found which denies the inherent right of a court, in the absence of a limitation placed upon it by the power which created it, to punish as a contempt an act—whether committed in or out of its presence—which tends to impede, embarrass or obstruct the court in the discharge of its duties. It is a doctrine which is admitted in all its rigor by American courts everywhere, and does not need the support of foreign authorities based upon the fiction that the majesty of the king, represented in the persons of the judges, is always present in the court. It is founded upon the principle—which is coeval with the existence of the courts, and as necessary as the right of self-protection—that it is a necessary incident to the execution of the powers conferred upon the court, and is necessary to maintain its dignity, if not its very existence. It exists independent of statute. The legislative department may regulate the procedure and enlarge the power, but it cannot, without trenching upon the constitutional powers of the court, . . . fetter the power itself.''

Nor is the judge disqualified from sitting in the contempt proceedings. Petitioner's theory in this regard, if we understand it, is that the judge is disqualified from hearing the proceedings in contempt because the contempt itself consists in imputations upon his motives and attacks upon his integrity. Such is not and never has been the law. The position of a judge in such a case is undoubtedly a most delicate one, but his duty is none the less plain, and that duty commands that he shall proceed. However willing he may be to forego the private injury, the obligation is upon him by his

oath to maintain the respect due to the court over which he presides. As was said by the chief justice of this court in *In re Philbrook,* 105 Cal. 471, [45 Am. St. Rep. 59, 38 Pac. 511, 884]: "The law which in such cases makes us the judges of offenses against the court places us in an extremely delicate and invidious position, but it leaves us no alternative except to allow the court and the people of the state, in whose name and by whose authority it acts, to be insulted with impunity, or to exercise the authority conferred by law for the purpose of compelling attorneys to maintain the respect due to courts of justice and judicial officers."

Were the rule otherwise so that it was required that another judge should be called in to sit in the proceeding, the recalcitrant and offending party would need only to insult each judicial officer in turn until the list was exhausted, and thus, by making a farce of legal procedure, go scathless and unpunished.

Coming now to the facts constituting the alleged contempt, it appears that John Bashore is a man about seventy years of age, who has been an invalid for more than twenty years, has been partially deaf for several years, and whose wife attended to and conducted all of his business transactions, while he remained upon the ranch where they lived, some miles from Visalia; that he prosecuted an action to recover certain properties which had been sold under execution. The cause was tried before a jury, resulting in a verdict and judgment adverse to him, and upon his appeal to this court a new trial was ordered for certain errors in the admission of evidence and in the giving of instructions. (*Bashore* v. *Parker,* 146 Cal. 525, [80 Pac. 707].) The affidavit in support of the application for a change of judges, with other impertinent and defamatory matter, declares as follows: "which said rulings upon the admission of such evidence this affiant believes and alleges was done willfully and corruptly and for the purpose of preventing this affiant from having a fair and impartial trial of said action; and affiant believes that said Hon. W. B. Wallace is a sufficiently good judge of law to know that the said ruling so made by him, and such instructions given to said jury in said action, were erroneous, and such rulings and instructions were not the law of said case; and this affiant believes that said instructions were so given

and such rulings made with a full knowledge on the part of said judge that they were erroneous at the time they were given and made. And this affiant believes that the dislike and hatred of said W. B. Wallace, judge, as aforesaid, is so great that he would willfully make unlawful rulings in the trial of this action against this affiant, and that he would find all matters of fact against this affiant, whether there was any evidence to sustain such findings or not, and that he would not give the testimony of this affiant, or the witnesses produced by him upon the trial of said action, any credit whatever as against any witness of any kind or character that might be produced upon the side of the defendant in said action." This application for change of judges is founded upon subdivision 4 of section 170 of the Code of Civil Procedure, the provision of which is simply that "When it appears from the affidavit or affidavits on file that either party cannot have a fair and impartial trial before any judge of a court of record about to try the case by reason of the prejudice or bias of such judge, said judge shall forthwith secure the services of some other judge, of the same or another county." It must need little consideration to show that the language above quoted, as addressed to the law, is flagrantly and willfully contemptuous. It states the mere belief of Bashore, without any supporting fact, as in *Morehouse* v. *Morehouse,* 136 Cal. 332, [68 Pac. 976], unless it can be said that the fact that the judge fell into error upon the first trial of the case is sufficient to justify the imputation of a corrupt intent—an argument too preposterous to merit even enunciation. But, outside of this circumstance, the whole declaration is but the purported belief of this aged invalid, with no attempt to state even the source of that information or origin of that belief. It cannot impress the unprejudiced mind as being other than a deliberate intent to insult and defame the judge. Let it be understood that we are not here declaring that if a judge has in fact indulged in corrupt practices, or has in fact given a ruling or decision through a corrupt motive, those facts may not be stated. They may be. And they would be prepotent evidence of bias and prejudice. But it may not for one moment be countenanced that, without supporting facts, lawyer or litigant may wantonly charge a judge with corrupt and improper motives, and seek protection from the just consequences of such outrage under the shield

of the code provision. (*McCormick* v. *Sheridan*, (Cal.) 20 Pac. 24; *In re Philbrook*, 105 Cal. 471, [45 Am. St. Rep. 59, 38 Pac. 511, 884]; *People* v. *Brown*, 17 Colo. 431, [30 Pac. 338]; *In re Mains*, 121 Mich. 603, [80 N. W. 714]; *Hughes* v. *People*, 5 Colo. 436; *In re Snow*, 27 Utah, 265, [75 Pac. 740]; *Harrison* v. *State*, 35 Ark. 458; *In re Pryor*, 18 Kan. 72, [26 Am. Rep. 747].) So, while it is true that matters which are pertinent to the consideration and which are charged as facts are admissible, without reference to their effect upon the reputation of the judge, or of any one else, it is equally true that neither attorney nor litigant has any right to present such degrading accusations under the guise of mere belief, without the aid of a single supporting fact. (*May* v. *Ball*, (Ky.) 67 S. W. 257.)

Indisputably, therefore, John Bashore, upon the face of this record was guilty of contempt, committed in the immediate presence of the court. Is his attorney, who presumptively prepared, and who certainly presented to the court this affidavit, any less guilty? As the case now stands, we think not. Under his oath to maintain the respect due to courts, every attorney stands responsible, not only for his own individual conduct in court, but for every paper which, knowingly, he presents on behalf of his client. As the matter is here before us, the petitioner knowingly presented this affidavit on behalf of his client, and for this he is equally culpable with his client. Defenses are open to him, and he may exonerate himself upon the hearing from intentional wrong-doing, if the facts warrant, but no doubt can be entertained of the jurisdiction of the court, under the circumstances shown, to proceed with that hearing.

The writ is discharged.

Angellotti, J., Shaw, J., Sloss, J., McFarland, J., Lorigan, J., and Beatty, C. J., concurred.