[Civ. No. 4752.   Second Appellate District, Division Two.—August 28, 1924.]

JOHN LAPIQUE, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[1] CONTEMPT — CLASSIFICATION — POWER TO PUNISH — PROCEDURE.— Contempts are classified as civil or criminal, and also as direct or constructive—direct contempts being those which are committed "in the immediate view and presence" of the court or of the judge at chambers, all other contempts being constructive; and while the power to punish is the same in both cases, the procedure is different—in cases of direct contempt the court acts spontaneously, *ex mero motu,* and fines or commits the offender summarily, whereas in cases of constructive contempt an affidavit of facts constituting the contempt is an essential prerequisite, except in those cases where a statement of the facts has been made by referees or arbitrators or other judicial officers.

[2] ID. — RECORD — JURISDICTIONAL FACTS — INSUFFICIENT SHOWING.— Proceedings to punish for contempt must be taken as prescribed in the statute, and the record should show affirmatively upon its face the facts upon which the court's jurisdiction depends; and if the affidavit, in the case of constructive contempt, or if the order, in a case of direct contempt, does not thus show the facts upon which the power may be exercised and the adjudication may be made, the record fails to show jurisdiction and the order will be annulled on *certiorari,* or the contemner, if imprisoned, will be discharged on *habeas corpus.*

[3] ID. — SUFFICIENCY OF AFFIDAVIT OR ORDER — JURISDICTION — PRESUMPTIONS.—Contempt of court is a specific criminal offense, and no presumptions or intendments can be indulged against the offender, but the facts set forth in the affidavit or in the order, unaided by intendments or presumptions, must be sufficient to show contempt within the meaning of the law and that the court had jurisdiction to punish the accused.

[4] ID.—PRACTICING LAW WITHOUT LICENSE—INSUFFICIENT CONTEMPT ORDER.—Conceding that an order showing that the contemner

1.  See 5 Cal. Jur. 891; 6 R. C. L. 487.
2.  Necessity of affidavit or sworn statement as foundation for constructive contempt, note, 2 A. L. R. 225.  See, also, 5 Cal. Jur. 938; 6 R. C. L. 531.
3.  See 6 R. C. L. 530.
4.  When contempt is committed "in presence of court," note, 17 Ann. Cas. 220.  See 6 R. C. L. 492.
Practicing law without license as contempt, note, Ann. Cas. 1917B, 1200.  See, also, 3 Cal. Jur. 588; 2 R. C. L. 940.

(who was not an attorney) gave advice to and prepared certain documents for one of the defendants in a mortgage foreclosure proceeding, that said contemner went with said defendant to the courtroom of the presiding judge, that said defendant presented to the presiding judge an order extending time to plead, and that said defendant filed with the clerk of the court said order extending time and other documents prepared by the contemner, shows that the contemner was guilty of contempt in practicing law in the superior court without a license, such order does not show any act of contempt committed within the immediate view and presence of the court and, therefore, fails to show that the court had jurisdiction to punish said contemner summarily as for a direct contempt.

[5] Id.—Absence of License to Practice Law—Insufficient Order. An order summarily punishing a person as for a direct contempt, and which is made upon the theory that said person violated section 281 and subdivision 13 of section 1209 of the Code of Civil Procedure in that he practiced law in the superior court without a license, is fatally defective where it contains no recital tending to indicate that said person was not licensed to practice law.

(1) 13 C. J., p. 5, secs. 2–4, p. 31, sec. 40 (Anno.), p. 47, sec. 62, p. 60, sec. 82, p. 63, sec. 87, p. 64, sec. 88, p. 87, sec. 132. (2) 13 C. J., p. 65, sec. 89, p. 81, sec. 121, p. 82, sec. 121, p. 103, sec. 167, p. 107, sec. 173. (3) 13 C. J., p. 65, sec. 89, p. 66, sec. 89, p. 81, sec. 121, p. 82, sec. 121. (4) 13 C. J., p. 31, sec. 40 (Anno.), p. 81, sec. 121. (5) 13 C. J., p. 81, sec. 121.

PROCEEDING in Certiorari to review an order of the Superior Court of Los Angeles County, and Frank C. Collier, Judge thereof, adjudging petitioner guilty of contempt. Order annulled.

The facts are stated in the opinion of the court.

John Lapique, *in pro. per.*, for Petitioner.

Edward T. Bishop and Roy W. Dowds for Respondents.

FINLAYSON, P. J.—This is a proceeding in *certiorari* to review an order of the superior court for Los Angeles County (Honorable Frank C. Collier, Judge) adjudging petitioner guilty of contempt of court. The order apparently was made upon the theory that petitioner violated section 281

and subdivision 13 of section 1209 of the Code of Civil Procedure in that he practiced law in the superior court without a license. There is, however, no recital or finding in the order that petitioner was not licensed to practice law.

No affidavit of the facts constituting the contempt was presented. Petitioner was punished summarily upon the theory that he was guilty of a direct contempt, i. e., a contempt committed "in the immediate view and presence of the court," and that therefore it was not necessary to initiate the proceeding by an accusatory affidavit. Whether the order shows affirmatively upon its face that the acts recited therein constitute a direct contempt is the principal question presented for our consideration.

The facts antecedent to the order, which conduce to an understanding thereof, are these: There was pending in the superior court an action to foreclose a mortgage, commenced on March 6, 1924. That action was brought against the mortgagors and certain other persons, one of whom is a man of the name of Haley, who, the foreclosure complaint alleges, had or claimed to have some interest in the mortgaged premises. Haley, who claimed to be a lessee of the premises, appeared *in propria persona* and filed a special demurrer. Thereafter, on April 5, 1924, he conveyed his interest in the premises to Lapique, the petitioner here, who, upon an order made by the superior court, was substituted for Haley as a defendant in the foreclosure action. On May 15, 1924, Judge Collier, after having disposed of a certain motion presented to him by one of the parties to the suit, called Haley and Lapique to the witness-stand and examined each of them in open court regarding Lapique's activities in the foreclosure action. Upon the conclusion of this testimony, and solely upon the facts thus educed, the court made the contempt order which is sought to be annulled in the present proceeding. That order, after the title of court and cause, is as follows:

"It appears from the record and files of the action, and from the testimony of Arthur C. Haley and John Lapique that the complaint in this action was served upon Arthur C. Haley; that he took the same to John Lapique; that he and John Lapique went over the same carefully, and that John Lapique advised the defendant Haley regarding his

legal rights; and that thereafter and on or about March 17, 1924, John Lapique prepared a document on file in this action entitled 'Order extending time to plead or answer,' and filed herein March 17, 1924; and that John Lapique and Arthur C. Haley went to the courtroom of Presiding Judge John M. York; that John Lapique told Arthur C. Haley what to do with the order, and to present the same to the said presiding judge, and the same was by the said Arthur C. Haley presented to the presiding judge. That thereafter the said John Lapique prepared the document known as 'Special Demurrer' and filed herein on March 27th, 1924. That the special demurrer was thereafter presented to this court by the said Arthur C. Haley. That on or about April 5, 1924, the said John Lapique prepared a document on file herein known and designated as 'Affidavit and Order of Substitution of Defendant,' and filed in this court on April 5, 1924. That all of said documents were prepared by John Lapique; that the said Arthur C. Haley had nothing to do in the preparation thereof except to give his consent to John Lapique to prepare them. From the foregoing facts the court finds that John Lapique has been practicing law in this court, and is guilty of contempt of court; that he be fined the sum of Fifty Dollars, and that he be imprisoned in the county jail until such fine is paid. Said Lapique is granted five days' stay of execution.''

The validity of the order is attacked upon several grounds, the principal one of which, as we already have indicated, is that the facts recited in the order do not disclose any act of contempt committed in the immediate view and presence of the court, and that, therefore, the court was without jurisdiction to proceed summarily by punishing petitioner as for a direct contempt. Deeming this ground of attack fatal to the order, it will not be necessary to consider the other points urged by petitioner.

[1] It is familiar law that contempts are classified as civil or criminal, and also as direct or constructive. Direct contempts are those which are committed ''in the immediate view and presence'' of the court or of the judge at chambers. (Code Civ. Proc., sec. 1211.) All other contempts are constructive. The power to punish is the same in both cases. The difference is only one of procedure. In cases of direct

contempt the court acts spontaneously, *ex mero motu,* and fines or commits the offender summarily. In cases of constructive contempt an affidavit of the facts constituting the contempt is an essential prerequisite, except in those cases where a statement of the facts has been made by referees or arbitrators or other judicial officers. (Sec. 1211.) Unless, therefore, some one of the acts recited in Judge Colliers' order amounted to a direct contempt, an affidavit of the facts constituting the contempt was an indispensable requirement without which the court possessed no jurisdiction to punish petitioner.

[2] Proceedings to punish for contempt must be taken as prescribed in the statute. They are *stricti juris.* The court exercises but a special and limited jurisdiction in such matters, and the record should show affirmatively upon its face the facts upon which the court's jurisdiction depends. If the affidavit, in a case of constructive contempt, or if the order, in a case of direct contempt, does not thus show the facts upon which the power may be exercised and the adjudication may be made, the record fails to show jurisdiction and the order will be annulled on *certiorari,* or the contemner, if imprisoned, will be discharged on *habeas corpus.* (*Overend* v. *Superior Court,* 131 Cal. 280 [63 Pac. 372]; *Ex parte Hoar,* 146 Cal. 132 [79 Pac. 853]; *In re Northern,* 18 Cal. App. 52 [121 Pac. 1010]; 5 Cal. Jur., p. 952, tit. "Contempt.")

[3] Contempt of court is a specific criminal offense, and the proceeding is of a criminal nature. (*Hotaling* v. *Superior Court,* 191 Cal. 501 [39 A. L. R. 127, 217 Pac. 73].) Where the contempt is direct, i. e., where it is committed in the immediate view and presence of the court, no pleading is essential, the contempt in such cases being within the personal cognizance of the judge. The offense being criminal in its nature, no presumptions or intendments can be indulged against the offender, but the facts set forth in the affidavit or in the order, unaided by intendments or presumptions, must be sufficient to show contempt within the meaning of the law and that the court had jurisdiction to punish the accused. (*Schwarz* v. *Superior Court,* 111 Cal. 106 [43 Pac. 580]; *In re Shortridge,* 5 Cal. App. 371 [90 Pac. 478]; 5 Cal. Jur., p. 952, tit. "Contempt," par. 48.)

The decisions do not appear to be in entire harmony as to what constitutes contempt committed "in the immediate view and presence" of the court. Some of the cases leave the impression that these words "in the immediate view and presence" refer only to such acts as are committed directly under the eye or within the actual view or hearing of the judge, and in such wise that he may take cognizance of the acts of contempt of his own personal knowledge and not have to be informed by the testimony of others. Thus in a Michigan case, *In re Wood*, 82 Mich. 75 [45 N. W. 1113], it is said: " . . . the words 'immediate view and presence' are words of limitation, and exclude the idea of constructive presence. The immediate view and presence does not extend beyond the range of vision of the *judge* [italics ours], and the term applies only to such contempts as are committed in the face of the court. Of such contempts he may take cognizance of his own knowledge, and may proceed to punish summarily such contempts, basing his action entirely upon his own knowledge. All other alleged contempts depend solely upon evidence, and are inferences from fact, and the foundation for the proceedings to punish these must be laid by affidavit." This view is borne out to some extent by the language of our own supreme court in *Re McCarty*, 154 Cal. 534, where the court, on page 539 [98 Pac. 540, 542], holding that the contempt there under consideration was constructive, quite pertinently remarked that the court "*could have no knowledge* of the disobedience of its order save upon an affidavit showing the fact of nonpayment." (Italics ours.) In an early California case, *People* v. *Turner*, 1 Cal. 152, the court employed this language: "It will be observed that this statute, in carrying out the doctrine of the common law, provides for two different classes of contempts; the one class consisting of such contempts as are committed in the presence of the court during its session, and the other class of such contempts as are committed out of court. The method of proceeding in the punishment of these two classes of contempts is different. In the former the offender may be instantly apprehended and punished *without any further examination or proof*. But in the latter, which consist of matters arising at a distance, *and of which the court cannot have a perfect acquaintance or take*

*judicial knowledge,* the proceeding must be in a different
way, and the party accused is entitled to be heard in his
defense.'' (Italics ours.) Other cases give a broader mean-
ing to the words ''in the immediate view and presence.''
The view adopted by them is that a contempt is committed
''in the immediate view and presence'' of the court if it be
committed outside the presence of the judge but within the
immediate view and presence of any constituent part of the
court during a session thereof, as, for example, if it be
committed in the grand jury room while the grand jury is
transacting its business. Thus in *People* v. *Barrett,* 56
Hun. 351 [9 N. Y. Supp. 321], affirmed in 121 N. Y. 678
[24 N. E. 1095], and referred to approvingly by our own
supreme court in *Lamberson* v. *Superior Court,* 151 Cal.
460 [11 L. R. A. (N. S.) 619, 91 Pac. 101], it is said: ''It
seems to us to be clear that any disorderly, contemptuous
or insolent behavior committed in the presence of any one
of the constituent parts of the court, while engaged in the
business devolved upon it by law, must be a contempt com-
mitted in the immediate view and presence of the court.''
The opinion of Justice Barrett, the respondent in that case,
which is set forth in the opinion of the New York supreme
court, contains an admirable exposition of this theory: ''The
court,'' says Justice Barrett, ''is clearly an organization in-
vested by law with certain functions for the administration
of justice. A contempt committed in the immediate view and
presence of any constituent part of that organization, *during
the sitting of the court,* (italics ours) and tending to inter-
rupt the proceedings of such constituent part, is a contempt
in the immediate view and presence of the court. . . . That
the latter body [the petit jury] is directly and immediately
a constituent part of the court, and the petit jury room an
adjunct to the court, is treated throughout as a postulate
admitting of no question. This becomes entirely clear when
we free our minds from the popular notion that the judge
is the court. He is a constituent part of the organization,
but he is not the court. Nor is the courtroom the court, nor
the jury-room, nor the petit jury. The court is the totality
of the constituent parts. It consists of the entire judicial
organization for the trial of causes, and it is immediately
present whenever and wherever, from the opening to the

adjournment of the sitting, these constituent parts are actually performing the functions devolving upon them by law. If the judge happens to leave the bench and the courtroom for a few moments while counsel is summing up to the jury, and during his absence an assault is made upon the speaker, can there be a doubt that a criminal contempt is thereby committed? This is not because the act is done in the courtroom, but because it is done in the court. The court is in session and present, though the magistrate is temporarily absent.''

[4] As we view the present case it matters not whether we adopt the Michigan court's definition of the words ''in the immediate view and presence,'' as expressed in *Re Wood, supra,* or that of the New York court, as expressed in *People* v. *Barrett, supra;* for we are convinced that, tested in the crucible furnished by either view of the law, the facts recited in Judge Collier's order fail to show a contempt committed in the immediate view and presence of the court, and that, therefore, since the proceeding was not initiated by an affidavit of the facts, the order fails to show that the court possessed jurisdiction to make it.

Each of the several acts of petitioner as recited in the order under review, if classified according to its intrinsic character, falls within one of the four following categories: (1) The act of giving advice to and preparing documents for Haley; (2) the act of going with Haley to the courtroom of the presiding judge; (3) the act of presenting an order to the presiding judge; (4) the act of filing certain documents—filed, presumably, with the clerk.

If, now, we consider critically the acts of petitioner as above classified, it will be seen that the order under review, unaided by intendments and presumptions, wholly fails to show affirmatively that any act of contempt was committed ''in the immediate view and presence of the court,'' even if we give to those words their broadest possible meaning. Take, for example, the acts which fall within the first category: Nowhere does the order show that Lapique gave any advice to or prepared any document for Haley while in the immediate view and presence of any constituent part of the court, much less that he gave any advice or prepared any document directly under the eye or within the actual view

of the judge. The nearest approach to such a situation is to be found in these recitals: " . . . that John Lapique and Arthur C. Haley went to the courtroom of Presiding Judge John M. York; that John Lapique told Arthur C. Haley what to do with the order, and to present the same to the presiding judge." Even if it should be inferred that the act of going with Haley to the courtroom of the presiding judge and the act of telling Haley what to do with the order extending time to plead followed each other in the sequence recited in the order adjudging petitioner guilty of contempt, still there is nothing to indicate that the advice which Lapique gave to Haley concerning the order extending time to plead was given while the parties were in the courtroom of the presiding judge. It may have been given after they left the courtroom and at a time when they were beyond the limits of the courthouse. Indeed, for aught that appears to the contrary, all the advice which Lapique gave to Haley may have been given by him, and all the documents which he prepared for Haley may have been prepared by him, while he was miles away from the courthouse. And if such was the case, then, though the giving of such advice and the preparation of such documents outside the courthouse may have amounted to the practice of law, and as such may properly subject Lapique to punishment as for a constructive contempt in a proceeding initiated by affidavit, they cannot afford a basis for summary punishment as for a direct contempt. (See *Ex parte Rickert,* 126 Cal. 244 [58 Pac. 549].)

Taking up now the act described in the second of our four categories—the act of going with Haley to the courtroom of the presiding judge: The order under review does not show that such conduct constituted a direct contempt. For aught that appears to the contrary, the court may not have been in session while Haley and Lapique were in the courtroom. Not only does the order fail to show that the court was in session, but it does not show what, if anything, Haley and Lapique did while in the courtroom of the presiding judge. It is true that immediately following the recital that Lapique and Haley went to the courtroom of the presiding judge is the recital that Lapique told Haley what to do with the order extending time to plead. But, as we already have indicated, these two recitals are not

correlated. The circumstances narrated in them are not shown to have been directly connected with each other. They stand in the order under review as two separate, distinct and unconnected occurrences. And we may not seek to supply the connection by indulging in presumptions or intendments, and so give aid to the order.

Next for our consideration is the act described in the third of our categories—the act of presenting to the presiding judge the order extending Haley's time to plead. The order under review does not show that the presentation of that document was a direct contempt. The order extending time was presented to the presiding judge by Haley. But Haley was not acting as Lapique's agent. Haley was the principal. In presenting the order to the presiding judge he was acting on his own behalf. Lapique may have prepared the document for Haley—when or where we know not; but when it was prepared Lapique's connection with it, further than to advise Haley what to do with it, was ended. Except that it may have been wrongfully prepared by Lapique, the order extending time was a document which Haley, as a defendant in the action who had appeared *in propria persona,* could rightfully present to the presiding judge for his signature; and when it was signed by the presiding judge Haley could rightfully file it with the clerk. There was nothing on the face of the order itself which constituted a contempt of court. It contained no scandalous or defamatory language. And herein lies the essential difference between this case and the cases mainly relied upon by respondent—cases where the contemner had filed or had caused to be filed a scandalous document or a brief containing defamatory language. Examples of such cases are to be found in *McCormick* v. *Sheridan,* 3 Cal. Unrep. 36 [20 Pac. 24], and *Matter of Lapique,* 26 Cal. App. 258 [146 Pac. 690]. (See, also, *Lamberson* v. *Superior Court, supra.*)

Where a brief or other document containing scandalous or defamatory matter is filed with the clerk of a court, it obviously is the intention of its author that the defamatory and contemptuous language shall reach and ultimately be read and considered by the court. In such cases the document itself, being scandalous and contumelious on its face, carries with it its contemptuous character into the very pres-

ence of the court itself, where it was intended that it should ultimately go. But that is not this case. Here the documents prepared by Lapique—the order extending time to plead and the special demurrer—considered in and of themselves were not contemptuous. Intrinsically they were free from any taint of contemptuous conduct. They were such documents as Haley could rightfully present in open court or file with the clerk. If any contempt attaches to them it is of an extrinsic, not intrinsic, character. That is to say, the contempt, if any there was, lay in the act of Lapique in drafting the documents and in telling Haley what to do with them. But for aught that appears to the contrary, such acts, wholly extrinsic to the documents themselves, may have occurred somewhere outside of the courthouse.

What we have just said will suffice to dispose of those acts which fall within the fourth category mentioned by us—filing documents in the clerk's office. The order adjudging Lapique guilty of contempt does not show that he filed any of the documents. The documents were not contemptuous on their face, and therefore the mere act of filing them with the clerk—an act not shown to have been performed by Lapique—was not alone contempt of court committed within the immediate view and presence of the court. Lapique's contempt, assuming that he was not licensed to practice law, began and ended when and where he proffered his advice to Haley and drafted the documents for the latter's use.

For these reasons we conclude that the order under review fails to show any act of contempt committed within the immediate view and presence of the court, and that, therefore, it fails to show that the court had jurisdiction to punish petitioner summarily as for a direct contempt. [5] Moreover, though the point has not been urged, the order is fatally defective for the further reason that it contains no recital tending to indicate that Lapique was not licensed to practice law.

The order adjudging petitioner guilty of contempt is annulled.

Works, J., and Craig, J., concurred.