[S. F. No. 6245. In Bank.—March 22, 1913.]

FRED W. LAKE, J. B. TREADWELL, and CHARLES C. BOYNTON, Petitioners, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF KERN, Respondent.

CONTEMPT—INJUNCTION AGAINST ATTACKING VALIDITY OF JUDGMENT CANCELING CERTIFICATE OF PURCHASE OF LAND.—Parties who have been enjoined, by a final judgment, from asserting or claiming any right or interest in certain real estate originally belonging to the state of California, to which they made claim under a certificate of purchase which had been cancelled by a judgment in a prior action instituted by the state, and further enjoined from in any manner asserting or claiming that the judgment canceling the certificate is not a good, valid, and subsisting judgment, may be prosecuted for contempt for asserting their claim and attacking the validity of the judgment of cancellation in a subsequent action.

ID.—STATE LAND—JUDGMENT CANCELING CERTIFICATE OF PURCHASE—INJUNCTION AGAINST ATTACKING VALIDITY OF JUDGMENT—APPEAL FROM ORDER REFUSING NEW TRIAL—AFFIRMANCE OF ORDER—EFFECT OF JUDGMENT.—The assignees of a prior certificate for the purchase of state land, for the cancellation of which a judgment had been rendered in an action by the state, on account of the alleged failure of the purchaser to pay interest on the unpaid balance of the purchase price, brought an action against a subsequent patentee of the land, asserting the validity of the prior certificate and the invalidity

of the proceedings resulting in the issuance of the state patent, and seeking to charge such patentee as trustee of the naked legal title for their benefit. The answer of the patentee set up the judgment canceling the prior certificate, averring that it was duly given and made and was a valid and subsisting judgment, under which all the rights of the prior purchaser and his successors in interest in and to the prior certificate were foreclosed and annulled. The trial court found in favor of the patentee as to the effect and validity of the judgment of cancellation, and entered a decree sustaining the patent, declaring the judgment canceling the prior certificate to be good and valid, and the rights of the prior purchaser and his successors in interest therein to have been foreclosed, and enjoining such assignees from asserting or claiming any right to or interest in said land, or from in any manner asserting or claiming that the judgment canceling the certificate is not a good, valid, and subsisting judgment. The assignees of the certificate appealed from an order denying their motion for a new trial in such action, without appealing from the judgment therein, and the supreme court affirmed the order. *Held,* that the trial court had full jurisdiction to render the judgment as entered, and to embody therein the injunctive provisions, and that such injunction must be given effect in accordance with its plain terms, irrespective of the declarations of the supreme court, on the appeal from the order, in reviewing the rulings of the trial court in receiving and rejecting evidence, which were made the basis of the motion for new trial.

ID.—CONTEMPT BY SUCCESSOR OF PARTY ENJOINED—NOTICE OF INJUNCTION.—A successor of an assignee of the canceled certificate, who acquired his interest after such injunctive judgment had been rendered, and with notice of it, was bound by the judgment, and chargeable in contempt proceedings for subsequently attempting to impeach, in another action, the validity of the judgment canceling the certificate.

ID.—CONTEMPT BY ATTORNEY—MAINTAINING PLEADING IN VIOLATION OF INJUNCTION.—An attorney for the parties claiming under such canceled certificate, who was ignorant of the injunctive provisions of such judgment at the time he filed a pleading attacking the validity of the judgment canceling the certificate, was guilty of contempt, if he contumaciously insists upon maintaining such pleading after his attention had been called to the injunction.

APPLICATION for a Writ to Review a judgment of the Superior Court of Kern County declaring the petitioners to be in contempt. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

James F. Peck, and Walter Shelton, for Petitioners.

Frank H. Short, Everts & Ewing, George E. Whitaker, J. W. McKinley, and Hunsaker & Britt, for Respondent.

HENSHAW, J.—This court issued its writ to review a judgment of the superior court of the county of Kern declaring petitioners to be in contempt. The contempt charged and found rests upon the violation by petitioners of another judgment given by the same superior court, enjoining them from the assertion of any rights or claims to certain real estate situated in the county of Kern. In the last mentioned case an appeal from the order denying a motion for a new trial was affirmed by this court, whose decision will be found in *Lake* v. *Bonynge,* 161 Cal. 121, [118 Pac. 535]. In the opinion handed down in that case will also be found a statement of many of the facts bearing upon this consideration. It may be convenient, however, briefly to summarize them.

In 1889 S. Davis procured a certificate of purchase for six hundred and forty acres of land belonging to the state of California. In 1892 in the superior court of Kern County was commenced by the people of the state of California an action against S. Davis to foreclose his interest in the land and annul his certificate of purchase on account of his failure to pay the interest on the unpaid balance of the purchase price. On December 27, 1892, a decree so foreclosing and annulling Davis's certificate of purchase was entered. No appeal was taken from this judgment and it became final on December 27, 1893. There was at the time of the commencement of the action nothing of record with the registrar of the state land-office to disclose that Davis had parted with any interest in his certificate of purchase. In July, 1899, Mary A. Bonynge made application to purchase the same land from the state, and a certificate of purchase therefor was issued to her on January 21, 1900. On December 7, 1900, Davis executed a conveyance of all his interest in his certificate to one Charles H. Gilman. Gilman retained a one-fourth interest and conveyed three-fourths to Lake and Snow, under an agreement on their part to take and maintain all necessary legal proceedings to establish the validity of the Davis certificate of purchase. On December 31, 1900, in pursuance of this agreement a motion was

made by F. W. Lake to vacate the judgment of foreclosure in People of the State of California v. Davis, upon the ground that no service of summons, actually or constructively, had been made on Davis. This motion was made upon the records and files in the action, supported by the affidavits of Davis, Gilman, and Lake. The outcome of this controversy will be found reported in *People* v. *Davis,* 143 Cal. 673, [77 Pac. 651]. In brief, the decision of this court upheld the action of the trial court in refusing to vacate the judgment upon the ground that, as the motion so to do was not made within the time limit fixed by section 473 of the Code of Civil Procedure, the court could grant it only from an inspection of the judgment-roll, and then only if such an inspection showed that the judgment was void upon its face. It was held that the judgment in People v. Davis was not void upon its face, for the reason that, however defective the affidavit for publication of summons or the order for publication of summons might be, they constituted no part of the judgment-roll under the law in force at the time the judgment was given, and therefore could not be considered upon the motion. While the motion to vacate the judgment so made in People v. Davis was a direct attack upon the judgment, it was a direct attack of so limited a character that the trial court was confined to a scrutiny of the judgment-roll and could not entertain any evidence *dehors* that record to show its invalidity, this court saying, "The sole remedy of the aggrieved party who may not in fact have been served, is to be found in a new action on the equity side of the court." (*People* v. *Norris,* 144 Cal. 422, [77 Pac. 998] ; *Bacon* v. *Bacon,* 150 Cal. 484, [89 Pac. 317] ; *Pioneer L. Co.* v. *Maddux,* 109 Cal. 642, [50 Am. St. Rep. 67, 42 Pac. 295].)

On the twenty-fourth day of March, 1900, Thomas L. Moran filed in the office of the state surveyor-general his affidavit and application to purchase the same land. The contest which thus arose was by the surveyor-general referred to the superior court of the county of Kern for trial and determination, and upon July 25, 1900, Thomas L. Moran commenced his action against Mary A. Bonynge and others for the determination of this contest. Gilman and his associates, Lake and Snow, sought leave to intervene in this contest and were permitted to intervene. In their intervention they set up the Davis certificate of purchase, asserted its validity, charged the invalid-

ity of the judgment in People *v*. Davis for the reason that the trial court had not in any manner obtained jurisdiction to render a valid or any judgment against Davis, and asked for a decree declaring the judgment in People *v*. Davis to be null and void, canceling the certificate of purchase issued to Mary A. Bonynge, and establishing the validity of the Davis certificate. To this complaint in intervention a general demurrer was interposed on behalf of Mary A. Bonynge, and the demurrer was sustained. The interveners suffered judgment accordingly. From the judgment in favor of Mary A. Bonynge against the interveners upon demurrer sustained, and against Moran after trial on the facts, the interveners appealed. The opinion of this court upon their appeal will be found reported in *Moran* v. *Bonynge,* 157 Cal. 295, [107 Pac. 312]. In brief, that opinion declares that the demurrer was properly sustained because of the failure of the complaint in intervention to allege the facts necessary to show that Davis was a qualified purchaser at the time he made his application and received his certificate; and, further, that the court's refusal to allow the interveners leave to amend must be regarded "as fully justified, since there is no bill of exceptions nor any facts to show the contrary."

The third phase of this litigation will be found reported in *Lake* v. *Bonynge,* 161 Cal. 120, [118 Pac. 535]. In January, 1909, the defendant Mary A. Bonynge had paid to the state the full purchase price of the land and had received the state's patent therefor. On March 1, 1909, Lake and Snow, representing the claimants to the Davis certificate, brought an action against Mary A. Bonynge and others, asserting the validity and legality of the Davis certificate, and that it is the only valid subsisting certificate of purchase issued by the state, alleging that the certificate of purchase issued to Mary A. Bonynge, the receipt of moneys from her, and the final issuance of patent to her, were all inadvertently and illegally done and made by the state, and the complaint prayed that Mary A. Bonynge be decreed to hold the naked legal title to the land in trust for the plaintiffs. The answer of Mary A. Bonynge, after denying the material averments of plaintiff's complaint, set up the judgment in People *v*. Davis, averring that it was duly given and made and was and is a valid, subsisting, and final judgment under which all the rights of

Davis and his successors in interest in and to his certificate of
purchase were foreclosed and annulled. The court found in
favor of the defendants as to the validity and effect of the
judgment, and entered its decree in their favor, sustaining the
patent to the defendant Mary A. Bonynge, and concluding
with the following language:

"It is further ordered, adjudged and decreed that the judg-
ment and decree of the superior court of the county of Kern,
state of California, given, made, and entered December 27,
1892, in the action of the People of the State of California
v. S. Davis, foreclosing and annulling certificate of purchase
No. 11,487, issued by the state of California to S. Davis, and
all rights of said S. Davis thereunder of, in and to said sec-
tion 36, township 12 north, range 24 west, San Bernardino
meridian, is a good, valid and subsisting judgment, whereby
said certificate was annulled, and all rights of said S. Davis
and of the plaintiffs herein thereunder were terminated and
forever foreclosed. And it is further ordered, adjudged and
decreed that the plaintiffs Fred W. Lake and H. H. Snow;
and each of them, be, and they are and each of them is, hereby
perpetually restrained and enjoined from asserting or claim-
ing any right to or interest in said real property, or any part
thereof, and they are, and each of them is, hereby forever re-
strained and enjoined from in any manner asserting or claim-
ing that said judgment is not a good, valid and subsisting
judgment."

We quote thus at length, as it is this language in this judg-
ment which forms the foundation of the present contempt pro-
ceedings.

In July, 1911, while Lake v. Bonynge, which we have just
considered, was pending on appeal to this court, the adminis-
trator of Charles H. Gilman (to whom it will be remembered
Davis conveyed all his interest in his certificate, and who in
turn conveyed certain interest therein to Lake and Snow) in-
stituted a suit against the same persons who were parties de-
fendant in Lake v. Bonynge, alleging the invalidity of the
judgment in People v. Davis, and seeking a decree setting that
judgment aside and imposing a trust in favor of the plain-
tiff upon the lands held under patent by Mary A. Bonynge
and her successors in interest. On the fourteenth day of De-
cember, 1911, Lake and Treadwell, the latter successor to the

interest of Snow, who also had been made defendants in the action instituted by the administrator of Gilman, filed a cross-complaint, alleging the qualifications and right of Davis to secure his certificate of purchase, and the issuance of it to him.

The cross-complaint then attacked the judgment in People v. Davis for lack of jurisdiction of the person of Davis for a failure, either actually or constructively, to serve him with summons, set up the proceedings in the case of Moran v. Bonynge, alleging, however, that in that action the superior court "did not adjudge the rights of the said interveners or either of them on the merits in said action, and, finally, set up the appeal pending in *Lake et al. v. Bonynge,* 161 Cal. 120, [118 Pac. 535], which, at the time of the filing of the cross-complaint, had not been passed upon by this court, and attacked the judgment in that case. The relief sought was a decree establishing that Mary A. Bonynge and her successors in interest held the legal title to the land in trust for the plaintiff and the cross-complainants, with a demand for an accounting of the valuable oils which by the other defendants had been extracted from the land.

All of these proceedings in these different actions were had, and all of these judgments were rendered, by the superior court of the county of Kern. Upon the filing of this cross-complaint, and after affirmance by this court of the order appealed from in Lake v. Bonynge, contempt proceedings were instituted against the petitioners, based upon the injunctive decree in Lake v. Bonynge which has been above quoted and which had become final. The court found that the conduct of the petitioners was willful, contumelious and in violation of the language of this decree, and adjudged them guilty of contempt accordingly. This consideration is not complicated by the fact that the cross-complaint was filed before the appeal in Lake v. Bonynge had been decided, for the contention of the cross-complainants—petitioners herein—upon the hearing in contempt was that they were entitled to press the issues tendered by their cross-complaint to a hearing and determination, and that they were not violating the injunction of the judgment in Lake v. Bonynge in so doing.

Conceding for the moment the proposition that petitioners herein have violated the injunctive clause of the judgment in Lake v. Bonynge in this their effort to prosecute their action

under their cross-complaint, no doubt can be entertained but that the method which the trial court adopted, that of citation and punishment for contempt, was proper. (*In re Chiles,* 22 Wall. 157, [22 L. Ed. 819] ; *Silliman* v. *Whitmer,* 173 Pa. St. 401, [34 Atl. 56] ; *Montana etc. Co.* v. *Boston etc. Co.,* 27 Mont. 410, [71 Pac. 403] ; *Erie Ry. Co.* v. *Ramsey,* 45 N. Y. 637.)

Thus we reach the crucial question in the case: Do the acts of the petitioners amount to a violation of the injunctive portion of the judgment in Lake *v.* Bonynge? If they do then petitioners must submit to the enforcement of the judgment in contempt which has been given against them. If they do not, they have committed no contempt. The divergent views of the parties to this proceeding may be thus briefly indicated: By respondent it is contended that the judgment in Lake *v.* Bonynge is a judgment by a court of general jurisdiction having in fact complete jurisdiction of the parties and of the subject matter of the action; that the decree which it rendered was one fully within its power to render; that the judgment given under these circumstances, whose validity has been finally established, is to be construed from its language alone, and that, by so construing it, that judgment declares that petitioners have not, nor has either of them, any right, title, interest, or estate either *legal or equitable* in or to the real property or any part thereof, and enjoins and perpetually restrains these petitioners from ever asserting or claiming any such right, title, interest, or estate, and from questioning in any manner the judgment in People *v.* Davis. Further respondent argues that whatever may have been the reasoning and discussion used by this court in its opinion in Lake *v.* Bonynge, whether sound or unsound, correct or mistaken, the fact remains that the sole *judgment* which this court entered was one affirming the order denying appellants' motion for a new trial; wherefore the reasoning and discussion upon which this court reached its conclusion, even if it be erroneous, is not a matter of guidance, much less a matter controlling the construction of the judgment from which an appeal had not been taken, which was not before the court and which therefore could not have been construed or have been the subject of construction on the appeal from the order denying a new trial; and that therefore the judgment must and does speak for itself.

The opposing contention of petitioners is that unless they have lost their right by the bar of the statute of limitations, by laches, by waiver, or by some other familiar method (no question of which is here involved), they are entitled to their day in court to make such showing as they can in a direct attack against the validity of the judgment in People *v.* Davis. They point out that their effort by motion to cause the vacation of the judgment in People *v.* Davis, while itself a direct attack, was a direct attack of so narrow a character that they were limited in their presentation of it to the judgment-roll alone and could not establish the propositions for which they contended by the affidavits and other evidence which they there offered; that therefore as to the judgment in People *v.* Davis by their motion to vacate they not only had not lost their right to attack it directly, but in no sense had they been able to make a direct attack, this court advising them in terms that their relief for their grievance was to be found through the medium of a direct action in a court of equity. To the judgment against them upon demurrer sustained in Moran *v.* Bonynge they say: 1. That there was no trial upon the merits because this court held that they had insufficiently pleaded Davis's right to secure the certificate of purchase (see 1 Freeman on Judgments, sec. 267), and 2. That in trying contests over land referred to the courts by the surveyor-general, the court itself acts as a tribunal of limited jurisdiction, and could not entertain an equitable plea to vacate the judgment in People *v.* Davis. The propositions thus advanced are so plainly true that they require no discussion.

Finally, petitioners argue that in Lake *v.* Bonynge they were denied the right to make proof by way of direct attack against the judgment in People *v.* Davis under the view taken by the trial court and affirmed in terms by this court,—namely, that the attack which they were there attempting to make upon the judgment in People *v.* Davis was itself a collateral attack, and that upon such collateral attack, under well settled rules, they could do no more than demand from the trial court a scrutiny of the judgment-roll and a declaration after such scrutiny whether or not the judgment was void upon its face, the same single and narrow proposition which they had contested in People *v.* Davis, which had been resolved against them by the decision of this court in People *v.* Davis, and

which had thus become *res adjudicata*. They argue that the
language of the opinion of this court in Lake *v.* Bonynge
fully establishes all this, and establishes further that the sole
reason which this court gave for sustaining the ruling of the
trial court in excluding their offered evidence attacking the
judgment in People *v.* Davis, for failure of service of sum-
mons, is that the attack was collateral and that such evidence
was therefore inadmissible. They argue further that this court
must have and would have reversed the order from which
they were appealing, and so the judgment, in Lake *v.* Bonynge
for the exclusion of this evidence, excepting for the reason
that this court held the attack to be collateral. And in con-
clusion they say that such being the case, the opinion and
discussion of this court amounts necessarily to a construction
of the judgment in Lake *v.* Bonynge, and that this construc-
tion in turn necessarily is this: that the petitioners had again
made a collateral attack upon the judgment; that by virtue
of the decision of this court in *People* v. *Davis,* 143 Cal. 673,
[77 Pac. 651], that judgment was immune from collateral
attack under the doctrine of *res adjudicata,* and that therefore
all that the injunctive decree in Lake *v.* Bonynge means or
could mean is to restrain these petitioners from ever again
making such a collateral attack.

But petitioners' contention carries the doctrine of the con-
struction of judgments beyond permissible bounds. It is not
to be doubted that in the action of Lake *v.* Bonynge, under
its pleadings and issues, the court had full jurisdiction to de-
clare the judgment which it entered. Indeed, in that action
the very purpose of the litigation was to determine for and
against the litigants finally and forever their rights to the
land in controversy, and the injunction to enforce those rights
was both permissible and proper. (*Brooks* v. *Calderwood,* 34
Cal. 563; *People* v. *Center,* 66 Cal. 551, [5 Pac. 263, 6 Pac.
481]; *Axtel* v. *Gerlach,* 67 Cal. 483, [8 Pac. 34]; *Kittle* v.
*Bellegarde,* 86 Cal. 556, [25 Pac. 55].) Upon the face of the
judgment, moreover, no question can arise as to its intended
scope. It is broad enough, and designedly broad enough, to
prohibit these petitioners, their successors and privies, from
ever again in any manner attacking the validity of the judg-
ment in People *v.* Davis, or asserting or claiming any right to
or interest in the real property affected by that judgment,

and it formally declares that the claims and pretensions of the petitioners are without merit either in law or equity. If the plaintiffs in Lake v. Bonynge were dissatisfied with the judgment, if they believed it should be reversed or modified, they should have taken appropriate steps by appeal to effect this end. They did not do so. They appealed merely from the order refusing to grant their motion for a new trial, and upon their appeal pressed upon the consideration of this court certain rulings of the trial court in receiving and rejecting evidence. However erroneous the rulings of the trial court in this regard may be thought to have been, or, in turn, however erroneous the declarations of this court reviewing those rulings may be thought to have been, the fact still remains that the consideration was addressed solely to such rulings, and the determination upon those rulings could not operate to modify the plain terms of an injunction within the issues and within the power of the court to grant. (*People* v. *Bank of San Luis Obispo,* 159 Cal. 66, 81, 84, [Ann. Cas. 1912B, 1148, 37 L. R. A. (N. S.) 934, 112 Pac. 866] ; *In re James,* 99 Cal. 376, [37 Am. St. Rep. 60, 33 Pac. 1122] ; *Ex parte Joutsen,* 154 Cal. 540, [98 Pac. 391].)

It has been said heretofore that if the petitioners have violated the injunction, they are in contempt. This statement requires brief amplification. Petitioner Treadwell succeeded to the interests of Snow after the judgment in Lake v. Bonynge was rendered, and with notice of it. He therefore is bound by the judgment and chargeable in these contempt proceedings. (Code Civ. Proc., sec. 1908, sub. 2; *G. & C. Merriam Co.* v. *Saalfield,* 190 Fed. 927, [111 C. C. A. 517; *Ahlers* v. *Thomas,* 24 Nev. 407, [77 Am. St. Rep. 820, 56 Pac. 93] ; *In re Lennon,* 166 U. S. 548, [41 L. Ed. 1110, 17 Sup. Ct. Rep. 658].)

Petitioner Boynton is an attorney at law, and the attorney who represented petitioners in the filing of the cross-complaint. The court finds that this petitioner's answer to the citation, to the effect that in filing the cross-complaint he had overlooked the injunctive provisions of the judgment, which provisions were first called to his attention when served with the order to show cause, is true, but that his contempt is not thereby excused by reason of his contumacious conduct in insisting upon maintaining the cross-complaint after his atten-

tion had been so called to the judgment in Lake *v.* Bonynge. These findings constitute a sufficient warrant for the judgment. (Code Civ. Proc., sec. 282; *Lamberson* v. *Superior Court,* 151 Cal. 458, [11 L. R. A. (N. S.) 619, 91 Pac. 100]; *Havemeyer* v. *Superior Court,* 87 Cal. 267, [10 L. R. A. 650, 25 Pac. 433]; *Cape May etc. R. R. Co.* v. *Johnson,* 35 N. J. Eq. 422; *Stolts* v. *Jackson,* 82 App. Div. 81, [81 N. Y. Supp. 638].)

It follows herefrom that the judgment of the trial court is not in excess of its jurisdiction, and therefore the writ of review is discharged.

Shaw, J., Sloss, J., Melvin, J., Angellotti, J., and Lorigan, J., concurred.

Rehearing denied.