[Sac. No. 2232.    In Bank.—December 18, 1914.]

## O. P. GALE, Plaintiff, v. TUOLUMNE COUNTY WATER CO. (a Corporation), Defendant, ANNA A. FREITAS, Respondent; SIERRA AND SAN FRANCISCO POWER CO. (a Corporation), Appellant.

Contempt—Judgments or Orders Final—Nonappealable.—Judgments or orders made by a court or judge in cases of contempt are final and conclusive; and, therefore, such judgments or orders are nonappealable.

Id.—Judgment in Contempt Nonappealable Although Without Jurisdiction.—An appeal does not lie from the judgment, even though it appear that the court adjudging one guilty of contempt has acted without jurisdiction. The party aggrieved in such a case must resort to other remedies.

Courts—Superior Courts Successors to District Courts—Constitution of 1879.—The constitution of 1879 (Const., Art. XXII, sec. 3) abolished the district courts, but in so doing, it provided for the transfer on the first day of January, 1880, to their successors—the superior courts—of all records, books, papers, and proceedings of the district courts, and gave the superior courts "the same power and jurisdiction over them as if they had been in the first instance commenced, filed, or lodged therein."

Judgments — Injunction — Water-rights — Successor in Interest Bound by Judgment—Section 1908, Code Civil Procedure.—The successor in interest of the original defendant in an action to enjoin the latter from diverting the waters of a certain creek is bound, under section 1908 of the Code of Civil Procedure, by a judgment in favor of the plaintiff to the same extent as was the original defendant before it transferred the property.

Contempt—Violation of Perpetual Injunction Issued by District Court—Contempt of Superior Court.—A violation in 1914 of a perpetual injunction, granted by a district court in 1870, constituted contempt of the superior court, which was the successor of the district court.

Id.—Contempt Proceedings—Right of Successor of Plaintiff to Initiate.—One who has acquired the properties from the original plaintiff, in an action to enjoin the diversion of waters of a certain creek, is entitled to all the benefits which the original plaintiff acquired under a judgment awarding a perpetual injunction in his favor, and has the same right to initiate contempt proceedings for violation of the injunction that the original plaintiff would have had if he had never disposed of the properties.

Id.—Violation of Injunction—When Successor in Interest Guilty of Contempt.—The successor in interest of the defendant in an

action to enjoin the diversion of waters of a certain creek, being bound by a perpetual injunction issued against said defendant, is guilty of contempt of court in violating said injunction with notice thereof.

Id.—Contempt Proceeding Independent—Not Case in Equity.—A contempt proceeding, though it may arise in a case in equity, is an independent proceeding between the contemner and the court, criminal or *quasi* criminal in its nature, and is not itself a case "in equity."

Id.—Statutory Construction—Section 963 Controlled by Section 1222, Code Civil Procedure.—Section 963 of the Code of Civil Procedure, which provides that an appeal lies "from any special order made after final judgment," being general in its character, is controlled by the special law contained in section 1222 of the Code of Civil Procedure, which makes a judgment of contempt final and conclusive, and, therefore, nonappealable.

Id.—Direct and Constructive Contempt—No Distinction on Right of Appeal.—For certain purposes, the law recognizes a difference between a direct contempt, or that committed in the immediate view or presence of the court, and constructive contempt, or that committed elsewhere; but our code makes no distinction whatever as far as the right of appeal in either case is concerned.

Id.—Constitutional Law—Right of Appeal—Section 1222, Code Civil Procedure Constitutional.—The right of appeal is derived from our constitution or statutes, and, as the constitution nowhere, expressly or impliedly, gives the right of appeal in cases of contempt, section 1222 cannot be held unconstitutional on the theory that, if it is applicable to cases of constructive contempt, it is invalid.

Id.—Injunction—Water-rights—Determination of Title—Not Involved in Contempt Proceedings—Nonappealable Judgment.—In a suit to enjoin the defendant from diverting the waters of a certain creek, where the court rendered judgment in favor of the plaintiff, perpetually enjoining the defendant from interfering with the natural flow of the waters in such a way as to prevent the waters from coming to plaintiff's ditch, no question of title to the waters is involved in a subsequent proceeding, instituted for the purpose of having the defendant adjudged guilty of contempt in violating the injunction; and the contention that in the contempt proceeding there was a distinct question of title, both heard and determined, and that the injunction had either taken the form of an order made after final judgment, and is therefore appealable, or is in itself a judgment, which is also appealable, cannot be maintained.

APPEAL from a judgment of contempt of the Superior Court of Tuolumne County.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Chickering & Gregory, and Donald Y. Lamont, for Appellant.

J. P. O'Brien, for Respondent.

SULLIVAN, C. J.—Motion to dismiss appeal from judgment adjudging appellant guilty of contempt.

In February, 1870, O. P. Gale, the owner of a certain water ditch and water-rights in Tuolumne County, commenced an action in the district court of the fifth judicial district of this state in and for the county of Tuolumne, against the Tuolumne County Water Company (hereinafter called the "Water Company") to enjoin the company from diverting waters from Mormon Creek. In September, 1870, a judgment in favor of plaintiff was entered in the district court, by the terms of which the defendant and its agents, employees, and servants were perpetually "enjoined, inhibited and restrained from interfering with the natural waters of Mormon Creek and its tributaries above the head of plaintiff's ditch, so as to prevent said water from coming to the head of plaintiff's ditch, unless defendant turned out to plaintiff an amount of water equivalent to the natural water of said Mormon Creek." On appeal the judgment was affirmed. Subsequently Anna A. Freitas acquired from Gale his ditch and water-rights involved in the action, and the Sierra and San Francisco Power Company (hereinafter called the "Power Company") succeeded to all of the property rights and business of the Water Company. The defendant at the time the action was commenced and determined was engaged in collecting waters in the vicinity of Mormon Creek and selling the same, and using said creek and its tributaries and the waters thereof in the conduct of its business.

On September 26, 1913, Anna A. Freitas filed in the superior court of Tuolumne County her affidavit, in which she alleged that the Power Company had, at divers times in 1912 and 1913 "wrongfully violated the terms, conditions and provisions of said judgment and decree and perpetual injunction, with the intent then and there to violate the same, etc.," by diverting the waters of Mormon Creek and its tributaries. She also alleged that she had sufferel great and irreparable injury by the diversion of the waters to which she was entitled, to her damage in the sum of five thousand

dollars. Upon her affidavit an order was issued and served upon the Power Company, requiring it to show cause why it should not be punished for contempt for violating the injunction. On the hearing of the order to show cause the charging affidavit was amended in some respects, the most important amendment being that at all times in 1912 and 1913 the Power Company "had notice of and was bound by said judgment and decree and perpetual injunction."

In its answer to the amended affidavit the Power Company did not deny this allegation, but denied that it had in any manner violated the injunction, and also denied that Anna A. Freitas had suffered any injury or damage. On the hearing of the order to show cause, oral and documentary evidence was introduced. Upon the conclusion of the hearing the court adjudged that the Power Company had at divers times in August and September, 1913 "willfully and intentionally disobeyed and violated the terms, provisions and mandates of the judgment and decree and perpetual injunction made, given and entered in said district court on September 15, 1870, as aforesaid, and that by reason thereof the said Sierra and San Francisco Power Company, a corporation, is guilty of contempt of the authority of said district court and of this court, the successor thereof, as charged." As punishment for its contempt the court fined the Power Company five hundred dollars. It appears from the evidence and judgment in the contempt proceeding that the Springfield Tunnel & Development Company (hereinafter called the "Springfield Company") carried on mining operations in close proximity to Mormon Creek, at a point above the head of the Freitas ditch; that in its operations it sunk shafts, ran tunnels, and made other underground workings and excavations, which extended below the bed of Mormon Creek and its tributaries. The judgment of contempt recites: "That during the month of August and the first ten days of the month of September, 1913, the said underground workings and excavations tapped the natural waters of Mormon Creek and its tributaries and diverted them into the underground workings of the said mining properties operated by the said Springfield Tunnel and Development Company. That the said company pumped the said waters to the surface of its said property, and during the month of August, 1913, and the first ten days of September, 1913, delivered a

substantial part thereof to the Sierra and San Francisco Power Company, who received the same through its weir situate upon Mormon Creek, and the said Sierra and San Francisco Power Company, during said time, conveyed the same through its ditches in Mormon Creek, and appropriated the water so received to its own use. That the waters so pumped by the Springfield Tunnel and Development Company from its mining property, and the portion thereof delivered to, and received by, the Sierra and San Francisco Power Company, as aforesaid, were a portion of the natural waters of Mormon Creek and its tributaries, and the same were wrongfully and in violation of the terms and provisions of said judgment and decree, and perpetual injunction, appropriated by the said Sierra and San Francisco Power Company to its own use.''

From the judgment of contempt the Power Company has attempted to appeal to this court. We say attempted to appeal, because no appeal lies from the judgment. ''The judgments and orders of the court or judge made in cases of contempt are final and conclusive.'' (Code Civ. Proc., sec. 1222.) Necessarily a judgment, which by the code is made final and conclusive, is not appealable. This court has repeatedly held that by reason of its finality and conclusiveness, the judgment in a contempt case is not appealable. (*Tyler* v. *Connolly*, 65 Cal. 28, [2 Pac. 414]; *In re Vance*, 88 Cal. 262, [26 Pac. 101]; *People* v. *Kuhlman*, 118 Cal. 140, [50 Pac. 382]; *Estate of Wittmeier*, 118 Cal. 255, [50 Pac. 393].) An appeal does not lie from such a judgment, even though it appear that the court adjudging one guilty of contempt has acted without jurisdiction. The party aggrieved in such a case must resort to other remedies. (*People* v. *Kuhlman*, 118 Cal. 140, [50 Pac. 382].)

The Power Company, successor in interest of the original defendant Water Company, was bound by the judgment rendered in 1870, and to the same extent as was the Water Company before the latter transferred its property. (Code Civ. Proc., sec. 1908.) The constitution of 1879 abolished the district courts, but in so doing it provided for the transfer on the first day of January, 1880, to their successors—the superior courts—of all records, books, papers, and proceedings of the district courts, and gave the superior courts ''the same power and jurisdiction over them as if they had been in

the first instance commenced, filed, or lodged therein.''
(Const., art. XXII, sec. 3.)    Therefore, a violation in 1913
of the perpetual injunction granted by the district court in
1870 constituted contempt of the superior court of Tuolumne
County.    Anna A. Freitas, having acquired from the original
plaintiff the properties, the subject of dispute in the case
of *Gale* v. *Water Company,* became entitled to all the benefits
which Gale acquired under the judgment of the district court,
and she had the same right to initiate contempt proceedings
which Gale would have had if he had never disposed of his
properties.    The Power Company being bound by the judg-
ment and injunction, as the successor of the Water Company,
its violation of the injunction, with notice thereof, constituted
contempt of court.    (*Lake* v. *Superior Court,* 165 Cal. 192,
[131 Pac. 371]; *Ahlers* v. *Thomas,* 24 Nev. 407, [77 Am. St.
Rep. 820, 56 Pac. 93]; *Merriam Co.* v. *Saalfield,* 190 Fed. 927,
[111 C. C. A. 517].)    The Power Company claims that inas-
much as the action of *Gale* v. *Water Company* was a case in
equity, it has a right of appeal by virtue of section 4 of
article VI of the constitution, which provides for an appeal
from the superior court to the supreme court ''in all cases in
equity except such as arise in justices' courts.''    A sufficient
answer to this contention, in addition to the authority of the
cases cited *supra,* is that a contempt proceeding, though it
may arise in a case in equity, is an independent proceeding
between the contemner and the court, criminal or *quasi*
criminal in its nature, and is not itself a ''case in equity.''

To sustain its appeal, the Power Company further claims
that as the judgment adjudging it guilty of contempt was
made after final judgment in the case of *Gale* v. *Water Com-
pany,* it has the right of appeal therefrom under section 963
of the Code of Civil Procedure, which provides that an
appeal lies ''from any special order made after final judg-
ment,'' but as this provision is general in character, it is
controlled by the special law contained in section 1222 of
the Code of Civil Procedure, which makes a judgment of con-
tempt final and conclusive and therefore nonappealable.    Ap-
pellant asserts that section 1222 of the Code of Civil Proce-
dure, making judgments and orders in cases of contempt final
and conclusive, does not apply to constructive contempts.
For certain purposes the law recognizes a difference between
a direct contempt, or that committed in the immediate view

and presence of the court, and constructive contempt, or that committed elsewhere. But our code makes no distinction whatever as far as the right of appeal in either case is concerned, and we can make none. Appellant further claims that section 1222 of the Code of Civil Procedure, if applicable to cases of constructive contempt, is unconstitutional. The right of appeal is derived from our constitution or statutes. The constitution nowhere, expressly or impliedly, gives a right of appeal in cases of contempt. Therefore section 1222 cannot be unconstitutional.

The main contention of the Power Company is that in the contempt proceeding "there was a distinct question of title both heard and determined; that this injunction has either taken the form of an order made after final judgment, and is therefore appealable, or it is in itself a judgment, which is also appealable."

The appellant is in error in claiming that the judgment of contempt determined title. The judgment against the defendant is nothing more nor less than one adjudging it guilty of contempt of court. Title to the waters which it diverted was determined by the district court, in the case of *Gale* v. *Water Company,* to be in Gale. The same title was in his successor in interest at the time of the wrongful diversion. By reason of the judgment of the district court, concluding alike. the defendant and its successors in interest, the lower court was bound to recognize the title of Anna A. Freitas to the waters of Mormon Creek and its tributaries. No question of title to these waters was raised in the contempt proceeding and none was determined. If the original defendant water company, after the judgment rendered against it by the district court, had by underground workings and excavations under the bed of Mormon Creek and its tributaries, tapped the waters thereof and wrongfully diverted the same to its own use, it would have been guilty of contempt, as much so as if the diversion had taken place on the surface. If the original defendant, instead of directly appropriating the waters in question, had obtained them through the Springfield Company, or some other agency which had diverted the waters by underground methods or surface connections, it likewise would have been guilty of contempt of court. As the Power Company occupies in relation to the case the same position exactly that the Water Company would have occupied if it

had not transferred its properties, the Power Company was guilty of contempt if directly or indirectly, by underground methods or otherwise, it wrongfully diverted the ·waters of Mormon Creek and its tributaries, title to which waters was in Anna A. Freitas. The issue before the lower court was, did the Power Company take waters from Mormon Creek and its tributaries in violation of the injunction granted by the district court? That issue was decided adversely to the appellant. The lower court may have been egregiously mistaken in its judgment, but, whether mistaken or not, its judgment must stand. It cannot be reviewed on appeal or otherwise.

It follows that the attempted appeal taken by the Sierra & San Francisco Power Company from the judgment of the superior court of Tuolumne County adjudging it guilty of contempt must be and the same is hereby dismissed.

Henshaw, J., Shaw, J., Angellotti, J., and Melvin, J., concurred.